# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | **Chapter 11** |
| | ) | |
| | ) | **Case No. 07-03856** |
| **JS II, LLC, *et al.*,** | ) | **(Jointly Administered)** |
| | ) | |
| Debtors. | ) | **Hon. Jacqueline P. Cox** |

## STIPULATION AND INTERIM ORDER (I) AUTHORIZING SECURED POSTPETITION FINANCING ON A SUPERPRIORITY BASIS PURSUANT TO 11 U.S.C. § 364 AND (II) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(c)

Upon the motion (the "Motion") dated March 5, 2007 of J.S. II, L.L.C. ("JS II"), River Village I, L.L.C. ("River Village I"), River Village West, L.L.C. ("River Village West"), and KND Investments, L.L.C. ("KND," and together with JS II, River Village I, and River Village West, the "Debtors"), (a) pursuant to Section 364(c) of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "Bankruptcy Code") and Rules 2002, 4001(c) and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), seeking this Court's authorization for the Debtors, inter alia, (i) to assume JS II's existing loan agreements as modified in certain respects in order for the Debtors to obtain postpetition financing (the "Postpetition Financing") up to an aggregate principal amount not to exceed $14,500,000.00 plus accrued interest (the "Commitment") from American Chartered Bank (the "Lender"); (ii) to grant the Lender, pursuant to Bankruptcy Code §§ 364(c) and 364(d), liens on the Debtors' property to secure the Debtors' obligations under the Postpetition Financing; and (iii) to grant the Lender priority in payment with respect to such obligations over any and all administrative expenses of the kinds specified in Bankruptcy Code §§ 503(b) and 507(b), other than as described below; and

(b) seeking a preliminary hearing (the "Preliminary Hearing") on the Motion to consider entry of

an interim order pursuant to Bankruptcy Rule 4001 (this "Order") authorizing the Debtor to

borrow from the Lender under the Postpetition Financing up to an aggregate of $950,000 plus

accrued interest on the aggregate principal amount upon the terms and conditions set forth in this

Order pending the Final Hearing referred to below; and (c) requesting that a final hearing (the

"Final Hearing") be scheduled by this Court to consider entry of a final order (the "Final Order")

authorizing on a final basis, inter alia, the Postpetition Financing; and due and sufficient notice

of the Motion under the circumstances having been given; and the Preliminary Hearing on the

Motion having been held before this Court; and upon the entire record made at the Preliminary

Hearing, and this Court having found good and sufficient cause appearing therefor;

The Debtors and the Lender STIPULATE for all purposes in this Case (as defined

below):

A.      On March 5, 2007 (the "Filing Date"), the Debtors filed voluntary petitions for

relief with this Court under chapter 11 of the Bankruptcy Code, and thereby commenced the

above-captioned case (the "Case"). The Debtors remain in possession of their property, and they

continue to operate and manage their business, as debtors in possession pursuant to Bankruptcy

Code §§ 1107 and 1108.

B.      This Court has jurisdiction over the Case and the Motion pursuant to 28 U.S.C.

§§ 157(b) and 1334. The Motion constitutes a core proceeding as defined in 28 U.S.C.

§ 157(b)(2).

C.      The Lender, as lender, and JS II, as borrower (the "Borrower"), are parties to (i)

that certain Loan and Security Agreement, dated as of April 28, 2006 (as amended,

supplemented or otherwise modified prior to the commencement of this Case, the "Term Loan

Agreement"), (ii) that certain Construction Loan Agreement, dated May 30, 2006 (as amended, supplemented or otherwise modified prior to the commencement of this Case, the "Construction Loan Agreement"); and (iii) all collateral and ancillary documents (the "Prepetition Loan Documents") executed in connection with the Term Loan Agreement and the Construction Loan Agreement (collectively, the "Prepetition Loan Agreements"). The maturity date specified in the Construction Loan Agreement and the Borrower's corresponding promissory note to the Lender is May 25, 2007 ("Maturity Date"). The Borrower's failure to pay all unpaid amounts due to the Lender under the Construction Loan Agreement on the Maturity Date would constitute an event of default under both of the Prepetition Loan Agreements. True and correct copies of the Prepetition Loan Agreements and the Prepetition Loan Documents are included in the Appendix that the Debtors filed with the Motion and are incorporated herein by reference. Unless otherwise specified, all capitalized terms used but not defined herein shall have the meanings given in the Prepetition Loan Agreements.

D.    Without prejudice to the rights of any other party (but subject to the limitations described in ordering paragraph 26 below), the Debtors admit that, in accordance with the terms of the Prepetition Loan Documents, the Borrower is truly and justly indebted to the Lender under the Prepetition Loan Agreements, without defense, counterclaim or offset of any kind, and that as of the Filing Date (i) the Borrower was liable to the Lender in the aggregate principal amount of approximately $10,340,000 in respect of loans made by the Lender to the Borrower pursuant to the Prepetition Loan Agreements (plus attorneys' fees, costs and interest accrued and unpaid thereon) (the "Prepetition Indebtedness") and (ii) as of the Filing Date, the Debtors, in consideration of the Postpetition Financing to be made under the Commitment, waive and release any and all causes of action and claims against the Lender and its agents, representatives, assigns

and successors. The provisions of this paragraph D constitute a stipulation by the Debtors and not a finding by the Court, subject to the provisions of ordering paragraph 26 of this Order.

E.       Without prejudice to the rights of any other party (but subject to the limitations described in ordering paragraph 26 below), the Debtors further admit that by reason of the Prepetition Loan Documents, the Prepetition Indebtedness is secured by enforceable mortgages, security interests, and collateral assignments of leases and rents granted by the Borrower to the Lender upon and in the Borrower's interest in real estate commonly known as (i) 1500 West 33rd Street, Chicago, Illinois, (ii) 3333 South Iron Street, Chicago, Illinois, (iii) 1501 South Hillock, Chicago, Illinois; (iv) 2814 South Lock, Chicago, Illinois; and (v) Bridgeport Village, Chicago, Illinois, all as more specifically described in the Prepetition Loan Documents (together with any reserve accounts maintained by the Lender in connection with the Prepetition Indebtedness, the "Prepetition Collateral"). The provisions of this paragraph E constitute a stipulation by the Debtor and not a finding of the Court, subject to the provisions of ordering paragraph 26 of this Order.

F.       Without prejudice to the rights of any other party (but subject to the limitations described in ordering paragraph 26 below), the Debtors further admit that they do not have sufficient available sources of working capital and financing to carry on the operation of their business without the Postpetition Financing. The ability of the Debtors to maintain business relationships with their vendors and contractors, to complete construction projects, continue development activities, and otherwise finance their operations, is essential to the Debtors' continued viability. In addition, the Debtors' need for financing is immediate and critical. In the absence of the Postpetition Financing, the continued operation of the Debtors' business would not be possible and serious and irreparable harm to the Debtors and their estate would occur.

The preservation, maintenance and enhancement of the value of the Debtors' assets are of the utmost significance and importance to a successful reorganization of the Debtors under chapter 11 of the Bankruptcy Code.

G.    Given the Debtors' current financial condition and capital structure, the Debtors are unable to obtain unsecured credit allowable under Bankruptcy Code § 503(b)(1) as an administrative expense. Financing on a postpetition basis is not otherwise available without the Debtors granting, pursuant to Bankruptcy Code § 364(c)(1), claims having priority over any and all administrative expenses of the kinds specified in Bankruptcy Code §§ 503(b) and 507(b), other than as described in paragraph 13 below, and securing such indebtedness and obligations with the liens, mortgages, security interests, and collateral assignments of leases and rents security interests described below pursuant to Bankruptcy Code §§ 364(c) and 364(d).

H.    Notice of the Preliminary Hearing and the relief requested in the Motion has been given to (i) the Office of the United States Trustee, (ii) the creditors holding the 20 largest unsecured claims against the Debtors; and (iii) known holders of prepetition liens against the Debtors' property. No official committee of unsecured creditors (the "Committee") has been appointed in the Case. The Preliminary Hearing has been held pursuant to the provisions of Bankruptcy Rule 4001(c)(2).

I.    Based on the record presented to this Court by the Debtors, it appears (and the Debtors and the Lender have stipulated) that the Postpetition Financing has been negotiated in good faith and at arm's-length between the Debtors and the Lender, and any credit extended and loans made to the Debtors pursuant to this Order shall be deemed to have been extended, issued or made, as the case may be, in good faith within the meaning of Bankruptcy Code § 364(e).

J.      Based on the record before this Court, it appears (and the Debtors and the Lender have stipulated) that the terms of this Order, including, without limitation, the terms of the Postpetition Financing, are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

K.      The Debtors have requested immediate entry of this Order pursuant to Bankruptcy Rule 4001(c)(2). The permission granted herein to enter into the Postpetition Financing and obtain funds thereunder is necessary to avoid immediate and irreparable harm to the Debtors. This Court concludes that entry of this Order is in the best interests of the Debtors' estates and creditors as its implementation will, among other things, allow for the continuation of the Debtors' development and construction activities and a continuation of services to the Debtors, which are necessary to sustain the operation of the Debtors' existing business and enhance the Debtors' prospects for a successful reorganization or a sale of their assets.

Based upon the foregoing findings, stipulations, and conclusions, and upon the record made before this Court at the Preliminary Hearing, and good and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED** that:

1.      Motion Granted On Interim Basis.  The Motion is granted on an interim basis, subject to the terms and conditions set forth in this Order.

2.      Authorization.  The Debtors are expressly authorized and empowered to (a) borrow money from the Lender on a secured and superpriority administrative basis in an amount not to exceed $950,000 pending the Final Hearing, (b) perform their obligations pursuant to the provisions of this Order, and (c) enter into such agreements, instruments and documents (collectively, if any, the "DIP Loan Documents") as may be necessary or required to evidence

their obligations to the Lender, to consummate the terms and provisions of the Motion and this Order and to evidence perfection of the liens and security interests to be given to the Lender pursuant hereto and thereto, including, without limitation, such amendments or modifications of the Prepetition Loan Documents as may be necessary to evidence the postpetition borrowings authorized herein; provided that (y) such DIP Loan Documents are consistent with this Order, and (z) nothing in this Order shall be deemed to authorize the assumption of the Prepetition Loan Agreements or any "roll-up" or "roll-over" of the Prepetition Indebtedness, though the Debtors reserve their right to request that such authority be granted in the Final Order.  All postpetition loans and all other indebtedness and obligations incurred on or after the Filing Date by the Debtors to the Lender pursuant to this Order and the DIP Loan Documents (including principal, accrued and unpaid interest, and costs and expenses) are referred to herein as the "DIP Indebtedness," and, together with the Prepetition Indebtedness, as the "Indebtedness."

      3.    Borrowing.  Subject to the terms and conditions of this Order and the DIP Loan Documents, the Lender will make postpetition loans to the Debtors, in each case in an aggregate amount not to exceed the Commitment.  Notwithstanding the foregoing, if the Lender in its sole discretion advances funds or other extensions of credit in excess of these limitations (or any other limitations in the DIP Loan Documents), such advances (and any other indebtedness in excess of such amount) shall constitute DIP Indebtedness entitled to the benefits of the DIP Loan Documents and this Order.

      4.    Existing Events of Default.  Nothing herein or in any of the DIP Loan Documents shall constitute or be deemed to constitute a waiver by the Lender of any existing or future Events of Default (including, without limitation, the Events of Default arising from the commencement of this Case).  Without prejudice to, or waiver of, the Lender's rights and

remedies against the Debtors in respect of any Events of Default other than the Existing Defaults (as defined below), the Lender agrees to forbear from foreclosing its liens on any DIP Collateral (as defined below) or otherwise taking enforcement action against the Debtors based solely on any Event of Default which occurred prior to the entry of this Order and of which the Lender had actual knowledge as of such date (collectively, the "Existing Defaults"); provided that such forbearance shall terminate upon the earlier of (i) the occurrence of any Event of Default other than an Existing Default or (ii) the Loan Payment Date (as defined below).

5.    Interest, Fees, Costs and Expenses. All Indebtedness shall bear interest at the Prime Rate plus two percent (2%) per annum. Interest shall be payable monthly in arrears on the 25th day of each month. All fees payable under the Prepetition Loan Agreements shall be applicable to the Postpetition Financing. The Lender will also be entitled to assess and collect a loan fee in the amount of fifty (50) basis points on the Postpetition Indebtedness. On a monthly basis, the Lender shall be entitled to recover all of its reasonable out-of-pocket expenses, including reasonable attorneys' fees, costs and expenses incurred in connection with the Indebtedness to the extent provided in the Prepetition Loan Agreements. On a monthly basis, the Lender shall provide counsel for the Debtors, counsel for any official committee of unsecured creditors appointed in connection with this Case ("Committee"), counsel for any person requesting notice of all matters, and the United States Trustee with a detailed invoice of all fees, costs and expenses for which reimbursement is sought. Each party served shall have ten (10) business days within which to file an objection with the Court and bring the matter on for a hearing on notice to the Debtor, any Committee, the United States Trustee, the Lender and all other parties requesting notice of all matters. To the extent the Court enters a final order finding that Lender is undersecured, all interest and fee payments with respect to Prepetition

Indebtedness shall be applied to the principal amount of such Prepetition Indebtedness to the extent Lender is undersecured.

6. _Termination of Postpetition Credit_. The Lender's willingness to make loans hereunder shall immediately and automatically terminate (except as the Lender may otherwise agree in writing in its sole discretion), all Indebtedness shall be immediately due and payable in cash (except as the Lender may otherwise agree in writing in its sole discretion), and the Lender shall have the enforcement rights set forth in paragraph 11 hereof (except as the Lender may otherwise agree in writing in its sole discretion) upon the earliest to occur of the following (the "Loan Payment Date"):

(i)    the Final Hearing Date (as defined below) or, if a Final Order is entered on or before the Final Hearing Date, the six month anniversary of the Filing Date, subject to a six month extension thereafter if (a) no Events of Default (other than the Existing Defaults) are in existence, and (b) the Debtors consent to, and this Court approves, such interest rate changes and additional fees as the Lender deems appropriate for such extension;

(ii)    the date of final indefeasible payment and satisfaction in full in cash of the Indebtedness;

(iii)    the effective date of any confirmed plan of reorganization in the Case;

(iv)    the consummation of the sale or other disposition of all or substantially all of the assets of the Debtors;

(v)    the occurrence of any violation by the Debtors of this Order (including, but not limited to, a violation of the covenants set forth in ordering paragraph 16 of this Order) or the Final Order, or any Event of Default (as defined in the Prepetition Loan Agreements) other than the Existing Defaults;

(vi)    the dismissal of the Case or the conversion of the Case into a case under Chapter 7 of the Bankruptcy Code;

(vii)    a trustee or an examiner with enlarged powers (beyond those set forth in §§ 1106(a)(3) and (4) of the Bankruptcy Code) relating to the operation of the business of the Debtors is appointed in the Case without the prior written consent of the Lender (which consent may be withheld in its sole discretion), or the Debtors apply for,

consent to, or acquiesce in, any such appointment without the prior written consent of the Lender (which consent may be withheld in its sole discretion);

(viii) this Order or the Final Order is stayed, reversed, vacated, amended or otherwise modified in any respect without the prior written consent of the Lender (which consent may be withheld in its sole discretion);

(ix) this or any other Court enters an order or judgment in the Case modifying, limiting, subordinating or avoiding the priority of any Indebtedness or the perfection, priority or validity of the Lender's prepetition or postpetition liens on any DIP Collateral;

(x) the Debtors file any application for approval or allowance of, or any order is entered approving or allowing, any administrative expense claim in the Case, having any priority over, or being pari passu with, the superadministrative priority of the Indebtedness;

(xi) an order is entered in the Case granting relief from the automatic stay of Section 362 of the Bankruptcy Code to any holder or holders of a lien on any material collateral in allowing such holder or holders to foreclose or otherwise realize upon such liens; or

(xii) any motion or application is filed by or on behalf of the Debtors in the Case seeking the entry of an order, or an order is entered in the Case, approving any subsequent debtor in possession facility for borrowed money or other extensions of credit unless such subsequent facility and such order expressly provide for the indefeasible payment and complete satisfaction in full in cash to the Lender of all Indebtedness prior to, or concurrently with, any initial borrowings or other extensions of credit under such subsequent facility.

7. Security for Indebtedness. The Lender is hereby granted as security for the repayment of all amounts of the DIP Indebtedness, pursuant to §§ 364(c)(2) and 364(c)(3) of the Bankruptcy Code, a valid and perfected first lien, subject only to Prior Claims (as defined below), on the Prepetition Collateral and all other property of the Debtor, except for any claims or causes of action (including, without limitation, any causes of action arising under chapter 5 of the Bankruptcy Code) belonging to the Debtors or their estates (collectively with all proceeds and products of any or all of the foregoing, the "DIP Collateral"); provided that the Lender and the Debtors reserve their rights to request that the Final Order include a provision granting the Lender a senior lien on the DIP Collateral, pursuant to § 364(d) of the Bankruptcy Code, to

secure the repayment of the DIP Indebtedness to the extent that it exceeds the Prepetition

Indebtedness. As used herein, the term "Prior Claims" shall mean (i) the prepetition liens and

security interests of the Lender and (ii) any non-avoidable valid, enforceable and perfected liens

and security interests in favor of any person or entity on or in the assets of the Debtors which

existed on the Filing Date and are not subject to § 552(a) of the Bankruptcy Code, but only to the

extent such liens and security interests are superior in priority to the liens and security interests

of the Lender, after giving effect to any existing subordination or intercreditor arrangements.

Other than the first priority liens and security interests in favor of the Lender pursuant to the DIP

Loan Documents and this Order and the Prior Claims, no other claims, liens or security interests

whether prior to or pari passu with the claims, liens or security interests of the Lender shall

attach to the DIP Collateral in this or any subsequent or superseding case (including, without

limitation, any conversion of the Case to a case under Chapter 7 of the Bankruptcy Code or any

other proceeding related hereto or thereto, the "Successor Case") without the express written

consent of the Lender (which consent may be withheld in its sole discretion)). The Lender at its

option may release at any time from its liens and security interests any assets determined by the

Lender to have a risk of environmental liabilities which the Lender in its sole discretion deems

unacceptable. In addition, except to the extent otherwise expressly set forth in paragraph 26 of

this Order, or in a written instrument, agreement or other document executed by one or more

duly authorized representatives of the Lender, no liens or security interests granted to the Lender,

and no claim of the Lender, shall be subject to subordination to any other liens, security interests

or claims under § 510 of the Bankruptcy Code or otherwise.

        8.     [Intentionally Deleted].

9.    Perfection of New Liens. All liens and security interests on or in the DIP Collateral granted to the Lender by this Order and the DIP Loan Documents shall be, and they hereby are, deemed duly perfected and recorded under all applicable federal or state or other laws as of the date hereof, and no notice, filing, mortgage recordation, possession, further order, landlord or warehousemen lien waivers or other third party consents or other act, shall be required to effect such perfection; provided, however, that notwithstanding the provisions of § 362 of the Bankruptcy Code, the Lender may, at its sole option, file or record or cause the Debtor to obtain any third party consents or execute, file or record, at the Debtors' expense, any such notices of liens and security interests, mortgages and other similar documents as the Lender may require. If the Lender, in its sole discretion, shall elect for any reason to cause to be obtained any third party consents or cause to be filed or recorded any such notices, financing statements, mortgages or other documents with respect to such security interests and liens, or if the Lender, in accordance with the DIP Loan Documents, shall elect to take possession of any DIP Collateral, all such third party consents, financing statements or similar documents or taking possession shall be deemed to have been filed or recorded or taken in this Case as of the commencement of this Case but with the priorities as set forth herein. The Lender may (in its discretion) but shall not be required to, file a certified copy of this Order in any filing or recording office in any county or other jurisdiction in which the Debtor has real or personal property and such filing or recording shall be accepted and shall constitute further evidence of perfection of the Lender's interests in the DIP Collateral.

10.    Waiver. The Debtors and their estates (and any party in interest acting on behalf of the Debtors) hereby irrevocably waive, and are barred from asserting or exercising any right, (a) without the Lender's prior written consent (which may be withheld in its sole

discretion), or (b) without prior indefeasible payment and satisfaction in full in cash of the Indebtedness: (i) to grant or impose, or request that the Court grant or impose, under § 364 of the Bankruptcy Code or otherwise, liens on or security interests in any DIP Collateral, which are <u>pari passu</u> with or superior to the Lender's liens on and security interests in such DIP Collateral; or (ii) to modify or affect any of the rights of the Lender under this Order or any DIP Loan Documents by any order entered in the Case or any Successor Case.

11.    <u>Modification of Automatic Stay; Other Remedies.</u>

(a)    Except as set forth in subparagraph (b) of this paragraph, which governs any action by the Lender to foreclose on its liens on any DIP Collateral or to exercise any other default-related remedies (other than those specifically referenced in the next sentence), the automatic stay pursuant to § 362 of the Bankruptcy Code is hereby vacated as to the Lender to permit it to perform in accordance with, and exercise, enjoy and enforce its rights, benefits, privileges and remedies pursuant to this Order and the other DIP Loan Documents without further application or motion to, or order from, the Court, and regardless of any change in circumstances (whether or not foreseeable), neither § 105 of the Bankruptcy Code nor any other provision of the Bankruptcy Code or applicable law shall be utilized to prohibit the Lender's exercise, enjoyment and enforcement of any of such rights, benefits, privileges and remedies. The Lender is hereby granted leave, among other things, to (a) receive and apply payments of the Indebtedness and collections on and proceeds of the Prepetition Collateral and the DIP Collateral to the Indebtedness in the manner specified in this Order and the DIP Loan Documents, (b) file or record any financing statements, mortgages or other instruments or other documents to evidence the security interests in and liens upon the DIP Collateral, (c) to the extent permitted by § 506(b) of the Bankruptcy Code, charge and collect any interest, fees, costs, and expenses and

other amounts accruing at any time under the DIP Loan Documents or this Order as provided therein, (d) to give the Debtors any notice provided for in any of the DIP Loan Documents or this Order, and (e) upon the occurrence of an Event of Default other than any Existing Default, or upon the Loan Payment Date, and without application or motion to, or order from the Court or any other court, (i) terminate the Prepetition Loan Agreements and the Postpetition Financing under this Order and the other DIP Loan Documents, (ii) declare all Indebtedness immediately due and payable, and require that all contingent Indebtedness (if any) be cash collateralized or terminated without liability to the Lender, (iii) revoke the Debtor's right, if any, under this Order and/or the other DIP Loan Documents to use cash collateral and (iv) cease making loans or other extensions of credit and/or suspend or terminate any obligation of the Lender to make loans or other extensions of credit under the DIP Loan Documents or this Order.

(b)     Upon the occurrence of any Event of Default other than any Existing Defaults, or upon the Loan Payment Date, the Lender shall be entitled (i) to file an emergency motion for relief from the automatic stay for the purpose of foreclosing or otherwise enforcing its liens on any or all of the DIP Collateral and/or to exercise any other default-related remedies under the DIP Loan Documents, this Order or applicable law, and (ii) to obtain an expedited hearing on such motion upon three (3) days' notice to counsel for the Debtors, counsel for any Committee and the U.S. Trustee. The Lender shall be entitled to such relief from the automatic stay upon a showing only that one or more Events of Default (other than any Existing Default) have occurred and are then continuing or that the Loan Payment Date has occurred. Upon the entry of an order granting the Lender relief from the automatic stay to enforce its liens or to exercise any other default-related remedies, (i) the Lender may exercise any remedies available to the Lender under this Order, the Prepetition Loan Agreements and other Prepetition

Loan Documents or applicable law, including to foreclose on the Prepetition Collateral and the DIP Collateral, (ii) provided that the Lender in its sole discretion has made available to the Debtor (through additional Postpetition Loans or by consenting to Debtors' use of cash collateral) sufficient funds to pay the costs thereof, the Debtors shall cooperate with the Lender in connection with any enforcement action by the Lender by, among other things, (A) providing access to its premises to representatives of the Lender, (B) providing the Lender access to their books and records, (C) performing all other obligations set forth in the Prepetition Loan Agreements, the Prepetition Loan Documents, this Order and/or the other DIP Loan Documents, and (D) taking reasonable steps to safeguard and protect the Prepetition Collateral and the DIP Collateral until the Lender can make adequate provision to protect and safeguard the Prepetition Collateral and the DIP Collateral, and the Debtors shall not otherwise interfere or encourage others to interfere with the Lender's enforcement of its rights.  In addition, upon the occurrence of any Event of Default (as determined by mutual agreement of the Debtors and the Lender, or in the absence of such agreement, by the Court) other than any Existing Default, or upon the Loan Payment Date, and provided that the Lender in its sole discretion has made available to the Debtors (through additional postpetition loans or by consenting to the Debtors' use of cash collateral) sufficient funds to pay the costs thereof, the Debtors shall, at the request of the Lender, use commercially reasonable efforts to sell or otherwise dispose of the DIP Collateral on terms and conditions acceptable to the Lender and shall turn over the proceeds of such sale(s) or other disposition(s) to the Lender for application to the Indebtedness in accordance with the provisions hereof and the DIP Loan Documents.

12.    <u>Priority Claims</u>  Subject to the Carve-Out described in ordering paragraph 13 below, the DIP Indebtedness shall have the highest administrative priority under

§ 364(c)(1) of the Bankruptcy Code, and shall have priority over all other costs and expenses of

administration of any kind, including those specified in, or ordered pursuant to, §§ 105, 326, 330,

331, 503(b), 507(a), 507(b) or 726 or any other provision of the Bankruptcy Code or otherwise

(whether incurred in the Case or any Successor Case), and shall at all times be senior to the

rights of the Debtors, any successor trustee or estate representative in the Case or any Successor

Case. Nothing in this Order shall constitute the consent by the Lender to the imposition of any

costs or expense of administration or other charge, lien, assessment or claim (including, without

limitation, the Commitment) against the Lender, its claims or its collateral under § 506(c) of the

Bankruptcy Code or otherwise.

13.    Carve-Out.

(a)    Subject to the remaining provisions of this paragraph, the Lender's liens

on and security interests in the DIP Collateral and its administrative claims under § 364(c)(1) and

507(b) of the Bankruptcy Code shall be subject only to (a) the payment of any unpaid fees

payable pursuant to 28 U.S.C. § 1930, (b) the aggregate allowed unpaid fees and expenses

payable under §§ 330 and 331 of the Bankruptcy Code to professional persons retained by the

Debtor pursuant to Court order (collectively, the "Debtor Professionals") in an amount not to

exceed the sum of (i) the aggregate amounts set forth in the Budget (as defined in ordering

paragraph 15 below) for fees and expenses incurred prior to the occurrence of an Event of

Default (other than any Existing Default), and (ii) $25,000 for fees and expenses incurred

subsequent to an Event of Default (other than any Existing Default), and (c) the aggregate

allowed unpaid fees and expenses payable under §§ 330 and 331 of the Bankruptcy Code to

professional persons retained by the Committee pursuant to Court order (collectively, the

"Committee Professionals") in an amount not to exceed the sum of (i) the aggregate amounts set

forth in the Budget (as defined in ordering paragraph 17 below) for fees and expenses incurred prior to the occurrence of an Event of Default (other than any Existing Default), and (ii) $10,000 for fees and expenses incurred subsequent to an Event of Default (other than any Existing Default) (the amounts specified in clauses (a), (b), and (c) of this paragraph, including the limitations therein, collectively, the "Carve-Out").

   (b)  Notwithstanding anything to the contrary in this Order or the DIP Loan Documents, the prepetition and postpetition liens and security interests and the administrative priority claims of the Lender shall be senior to, and no proceeds of Indebtedness (including any prepetition retainer funded by the Lender pursuant to the Prepetition Loan Documents) nor any Prepetition Collateral or DIP Collateral (or proceeds thereof) may be used to pay, any and all claims for services rendered by the Debtor Professionals or the Committee Professionals in connection with the assertion of or joinder in (but not investigation of) any claim, counterclaim, action, proceeding, application, motion, objection, defense or other contested matter, the purpose of which is to seek or the result of which would be to obtain any order, judgment, determination, declaration or similar relief: (x) invalidating, setting aside, avoiding or subordinating, in whole or in part, the Indebtedness or the liens and security interests of the Lender in the Prepetition Collateral or the DIP Collateral; or (y) preventing, hindering or otherwise delaying, whether directly or indirectly, the exercise by the Lender of any of its rights and remedies under the Prepetition Loan Agreements, the Prepetition Loan Documents, this Order and/or the DIP Loan Documents or the Lender's enforcement or realization upon any of the liens on or security interests in any Prepetition Collateral or DIP Collateral.

   14.  Cash Collateral Procedures.  From and after the date of the entry of this Order, all cash proceeds of any Prepetition Collateral or DIP Collateral shall be applied against

the Prepetition Indebtedness and the DIP Indebtedness as provided in this Order and the Prepetition Loan Documents.

15.    Use of Loan and Collateral Proceeds. Except as otherwise provided in ordering paragraphs 14, 17 and 18 hereof, the proceeds of any loans or other extensions of credit made by the Lender to the Debtor pursuant to this Order and the DIP Loan Documents, all proceeds of DIP Collateral and all cash collateral shall be used only as follows: (a) prior to the Loan Payment Date, pursuant to the budget attached hereto as Exhibit A (as may be amended or supplemented from time to time with the Lender's advance consent (and with at least five (5) business days of advance notice and a corresponding opportunity to file an objection with this Court provided to counsel for the Committee and the United States Trustee), the "Budget") for the payment of the Debtors' expenses incurred in the ordinary course of business, or any fees and expenses of the Debtor Professionals and the Committee Professionals, and any portion of the Indebtedness, and (b) on or after the Loan Payment Date, first, for the payment of any amounts constituting any part of the Carve-Out; second, for the payment of the Debtors' expenses incurred in the ordinary course of business in accordance with, and to the extent of the remaining term of, any applicable Budget; third, for indefeasible payment in full in cash of the Indebtedness; and fourth, upon payment in full thereof in cash, then for the payment of any allowed and non-Budgeted administrative expenses or other claims in accordance with the provisions of the Bankruptcy Code and orders of this Court. Funds borrowed under this Order shall be used by the Debtors in accordance with this Order. Notwithstanding the foregoing, the Debtors shall be (x) deemed to be in compliance with the Budget so long as its total cash disbursements, on a rolling four-week basis, are less than 125% of the amount provided for in the Budget for each respective four-week period (collectively, the "Variance"); and (y) permitted to

pay expenses in the ordinary course of business in accordance with the Budget and the Variance unless and until this Court enters a subsequent order to the contrary. The extension of Postpetition Financing shall not be construed as a commitment to continue to provide Postpetition Financing after the occurrence of an Event of Default (other than the Existing Defaults) or beyond the Loan Payment Date, regardless of whether the entire Commitment has been expended.

16.    Covenants. The Debtors shall timely comply with all of the covenants set forth in the Prepetition Loan Agreements, the Prepetition Loan Documents, this Order and the other DIP Loan Documents.

17.    Application of Collateral Proceeds. All proceeds of Prepetition Collateral and DIP Collateral shall be applied (A) first, to the Prepetition Indebtedness (in such order as determined by the Lender in its sole discretion) until paid in full, and (B) second, to the DIP Indebtedness (in such order as determined by the Lender in its sole discretion). The Debtors shall not have the right to direct the manner of application of any payments to the Lender or any other receipts by the Lender of proceeds of any of the Prepetition Collateral or DIP Collateral other than in the manner set forth in this ordering paragraph and the Prepetition Loan Agreements.

18.    Non-Ordinary Course Dispositions. No sale, lease or other disposition of Prepetition Collateral or DIP Collateral outside the ordinary course of business (including any auction or other similar sales) may be done without the Lender's consent or by order of the Court.

19.    Books and Records. The Debtors shall permit the Lender and any authorized representatives designated by the Lender (including, without limitation, its auditors,

appraisers and financial advisors) to visit and inspect any of the properties of the Debtors, including the Debtors' financial and accounting records, and to make copies and take extracts therefrom, and to discuss the Debtors' affairs, finances and business with such Debtors' officers and independent public accountants, at such reasonable times during normal business hours and as often as may be reasonably requested. Without limiting the generality of the foregoing, the Debtors shall promptly provide to the Lender and the Lender's designated representatives any information or data reasonably requested to monitor the Debtors' compliance with the covenants in the Prepetition Loan Agreements and the provisions of the DIP Loan Documents and this Order and to perform appraisals or other valuation analyses of any property of the Debtor.

20.    Authorized Signatories. The signature of John J. Kinsella or the Debtors' attorneys shall bind the Debtors, and no other approval shall be necessary.

21.    The Lender's Reservation of Rights; No Waiver. The Lender does not waive, and expressly reserves, any and all claims, defenses, rights and remedies it has pursuant to any or all of the Prepetition Loan Documents, the DIP Loan Documents, the Bankruptcy Code and/or other applicable law against the Debtors and any officer, director, employee, agent or other representative of the Debtor. In addition, the rights and obligations of the Debtors and the rights, claims, liens, security interests and priorities of the Lender arising under this Order are in addition to, and are not intended as a waiver or substitution for, the rights, obligations, claims, liens, security interests and priorities granted by the Debtors, in their prepetition capacity, under the Prepetition Loan Documents. Without limiting the generality of the foregoing, the Lender may petition this Court for any such additional protection it may reasonably require with respect to the Prepetition Indebtedness, the DIP Indebtedness or otherwise, and nothing in this Order

constitutes a finding with respect to the adequacy of the protection of the Lender's interests in
the Prepetition Collateral.

22.    Order Binding on Successors.  The provisions of this Order shall be
binding upon and inure to the benefit of the Lender, the Debtors, and their successors and assigns
(including any trustee or other estate representative appointed as a representative of the Debtors'
estate or of any estate in any Successor Case); provided, however, that the terms of this Order
shall not be binding on a chapter 7 trustee except with respect to loans made and expenses
incurred prior to the appointment of such chapter 7 trustee.  Except as otherwise explicitly set
forth in this Order, no third parties are intended to be or shall be deemed to be third party
beneficiaries of this Order or the DIP Loan Documents.

23.    Effect of Dismissal, Conversion or Substantive Consolidation.  If the Case
is dismissed, converted, otherwise superseded or substantively consolidated, the Lender's rights
and remedies under this Order and the DIP Loan Documents shall be and remain in full force and
effect as if the Case had not been dismissed, converted, superseded or substantively consolidated.
Furthermore, notwithstanding any such dismissal, conversion, supercission or substantive
consolidation, all of the terms and conditions of this Order, including, without limitation, the
liens and the priorities granted hereunder, shall remain in full force and effect; provided,
however, that a subsequently appointed chapter 7 trustee shall not be bound by this Order with
respect to loans made after the appointment of such chapter 7 trustee.

24.    Releases and Validation of Prepetition Indebtedness and Liens; Allowance
of Secured Claim.  The release, discharge, waivers and agreements set forth in this ordering
paragraph will be deemed effective upon the entry of a Final Order incorporating this paragraph,
subject only to the right of the Committee and any other party in interest to object on the terms

and conditions set forth in ordering paragraph 26 below. The Debtors and their estates, hereby:
(a) release and discharge the Lender, together with its affiliates, agents, attorneys, officers,
directors and employees from any and all claims and causes of action arising out of, based upon
or related to, in whole or in part, any of the Prepetition Loan Documents, any aspect of the
Prepetition relationship between the Lender and the Debtors, or any other acts or omissions by
the Lender in connection with any of the Prepetition Loan Documents or its Prepetition
relationship with the Debtors; (b) waive any and all defenses (including, without limitation,
offsets and counterclaims of any nature or kind) as to the validity, perfection, priority,
enforceability and nonavoidability (under §§ 510, 544, 545, 547, 548, 550, 551, 552 or 553 of
the Bankruptcy Code or otherwise) of the Prepetition Indebtedness and the security interests in
and liens on the Prepetition Collateral in favor of the Lender (which liens and security interests
are first priority subject only to the Prior Claims); and (c) agree, without further Court order and
without the need for the filing of any proof of claim, to the allowance of the prepetition claims of
the Lender pursuant to §§ 502 and 506 of the Bankruptcy Code on account of the Prepetition
Indebtedness as secured claims according to the Lender's books and records, the principal
amount of which is not less than approximately $10,340,000 as of the Filing Date, plus accrued
prepetition and postpetition interest, fees, expenses and other amounts chargeable under the
Prepetition Loan Documents.

     25.   The Lender's Relationship with the Debtors. Solely by virtue of making
decisions to make any Loans or other extensions of credit to the Debtors, in administering any
Loans or other extensions of credit, or taking any other actions reasonably related to this Order
or the Indebtedness or the DIP Loan Documents, the Lender shall have no liability to any third
party and shall not be deemed to be in control of the operations of the Debtors or to be acting as

a "controlling person," "responsible person" or "owner or operator" with respect to the operation

or management of the Debtors (as such term, or any similar terms, are used in the Internal

Revenue Code, the United States Comprehensive Environmental Response, Compensation and

Liability Act as amended, or any similar Federal or state statute), and the Lender's relationship

with the Debtors shall not constitute or be deemed to constitute a joint venture or partnership of

any kind between the Lender and the Debtors.

26.    Objections by Parties in Interest.  Except as set forth in stipulating

paragraphs D and E, in ordering paragraph 24 and in this ordering paragraph, all of the provisions

of this Order shall be final and binding on the Debtors and all creditors and other parties in

interest.  The Committee and any other party in interest other than the Debtors shall have until the

date that is seventy-five (75) days from the entry of this order to file and to serve upon counsel for

the Lender, objections or complaints respecting (a) the claims, causes of actions and defenses

released by the Debtors pursuant to paragraph 24 above or (b) the validity, extent, priority,

avoidability, or enforceability of the Prepetition Indebtedness or the Lender's prepetition liens on

and prepetition security interests in the Prepetition Collateral.  In the event that no objections or

complaints are filed with this Court and served upon counsel of record for the Lender within the

time period set forth above (unless such time period is extended for cause shown after notice and

a hearing upon motion filed prior to the expiration of such seventy-five (75) day period), the

provisions of paragraph 24 of this Order shall become final and binding on all such parties.

27.    [Intentionally Deleted].

28.    Guaranties.  As evidenced by their signatures below, the guarantors of the

Prepetition Indebtedness have acknowledged and agreed that (a) their guaranties of the

Prepetition Indebtedness (i) are unimpaired by this Order and shall remain in full force and

effect, and (ii) shall be deemed to apply to the DIP Indebtedness to the same extent as the Prepetition Indebtedness, and (b) they will execute new guaranties on the DIP Indebtedness in forms and in substance reasonably acceptable to the Lender.

29.    Effect of Modification of Order. The Debtors shall not, without the Lender's prior written consent, seek to modify, vacate or amend this Order or any DIP Loan Documents. If any of the provisions of this Order are hereafter modified, vacated or stayed by subsequent order of this or any other Court, such stay, modification or vacatur shall not affect the validity of any Indebtedness outstanding immediately prior to the effective time of such stay, modification or vacation, or the validity and enforceability of any lien, priority, right, privilege or benefit authorized hereby with respect to any such Indebtedness. Notwithstanding any such stay, modification or vacatur, any Indebtedness outstanding immediately prior to the effective time of such modification, stay or vacatur shall be governed in all respects by the original provisions of this Order, and the Lender shall be entitled to all the rights, privileges and benefits, including, without limitation, the security interests and priorities granted herein, with respect to all such Indebtedness.

30.    Safe Harbor. The Court has considered and determined the matters addressed herein pursuant to its powers under the Bankruptcy Code, including the power to authorize the Debtors to obtain credit on the terms and conditions upon which the Debtors and the Lender have agreed. Thus, each of such terms and conditions constitutes a part of the authorization under § 364 of the Bankruptcy Code, and is, therefore, subject to the protections contained in § 364(e) of the Bankruptcy Code.

31.    Subsequent Hearing; Procedure for Objections and Entry of Final Order. The Motion is set for a Final Hearing before this Court at **10:30 a.m. on April 10, 2007** (such

date or such later date to which the Final Hearing is adjourned or continued with the Lender's consent, the "Final Hearing Date"), at which time any party in interest may present any timely filed objections to the entry of a Final Order, in form and substance acceptable to the Lender in its sole discretion. The Debtors shall promptly serve a notice of entry of this Order and the Final Hearing, together with a copy of this Order, by regular mail upon (i) the parties identified in finding paragraph I hereof, and (ii) any other party which theretofore has filed in the Case a request for notice with this Court and served such request upon Debtors' counsel. The notice of the entry of this Order and the Final Hearing shall state that objections to the entry of a Final Order on the Motion shall be in writing and shall be filed with the United States Bankruptcy Clerk for the Northern District of Illinois no later than **April 3, 2007** which objections shall be served so that the same are received on or before 4:00 p.m. (Central time) of such date by (i) Steven B. Towbin, Shaw Gussis Fishman Glantz Wolfson & Towbin LLC, counsel to the Debtor, 321 N. Clark Street, Suite 800, Chicago, Illinois 60610 (ii) Mary Ann Murray, Burke Burns & Pinelli, Ltd., Suite 4300, 70 West Madison Street, Chicago, Illinois 60602, counsel to the Lender, (iii) counsel for any Committee, and (iv) the Office of the United States Trustee. Any objections by creditors or other parties in interest to any of the provisions of this Order shall be deemed waived unless filed and served in accordance with this paragraph.

32.    Objections Overruled or Withdrawn.  All objections to the entry of this Order have been withdrawn or overruled, without prejudice to any party's right to assert objections to entry of a Final Order on the Motion.

33.    Controlling Effect of Order.  To the extent any provisions in this Order conflict with any provisions of the Motion, any Prepetition Loan Documents or any DIP Loan Documents, the provisions of this Order shall control.

{5618 ORD A0161929.DOC 7}

25

34. . <u>Order Effective.</u> This Order shall be effective as of the date of its entry by

the Court.

ENTER: *Jacqueline P. Cox*

_J. P. Cox_

United States Bankruptcy Judge

Dated: March 14, 2007

AGREED TO:

JS II, LLC, *et al.*

By:_____
  One of its attorneys

Steven B. Towbin (#2848546)
Peter J. Roberts (#6239025)
Shaw Gussis Fishman Glantz
   Wolfson & Towbin LLC
321 North Clark Street, Suite 800
Chicago, Illinois 60610
(312) 541-0151

American Chartered Bank

By:_____
  One of its attorneys

Edward J. Burke
Mary Ann Murray
Burke Burns & Pinelli, Ltd.
Suite 4300
70 West Madison Street
Chicago, Illinois 60602
(312) 541-8600

_____
John J. Kinsella, guarantor

_____
Sidney Diamond, guarantor

00016

54.    <u>Order Effective</u>. This Order shall be effective as of the date of its entry by

the Court.

ENTER:

Dated: March _____, 2007

_____
United States Bankruptcy Judge

AGREED TO:

JS II, LLC, *et al.*                                American Chartered Bank

By:_____          By:_____
   One of its attorneys                      One of its attorneys

   Steven B. Towbin (#2848546)              Edward J. Burke
   Peter J. Roberts (#6239025)              Mary Ann Murray
   Shaw Gussis Fishman Glantz               Burke Burns & Pinelli, Ltd.
     Wolfson & Towbin LLC                   Suite 4300
   321 North Clark Street, Suite 800        70 West Madison Street
   Chicago, Illinois 60610                  Chicago, Illinois 60602
   (312) 541-0151                           (312) 541-8600

_____      _____
John J. Kinsella, guarantor          Sidney Diamond, guarantor

## JS II, LLC
### Four Week Budget Though March 30, 2007

| | 9-Mar-07 | 16-Mar-07 | 23-Mar-07 | 30-Mar-07 | Total |
|---|---|---|---|---|---|
| Beginning Cash | 267,467 | 134,667 | 70,867 | - | 267,467 |
| **Cash Receipts** | | | | | |
| Home Sales | | | | | |
| Rental Income | 54,000 | - | - | - | 54,000 |
| Total Receipts | 54,000 | - | - | - | 54,000 |
| **Cash Disbursements** | | | | | |
| Construction Costs | 10,000 | 35,000 | 292,900 | 93,000 | 430,900 |
| Real Estate Taxes | 127,000 | | | | 127,000 |
| Administrative & Overhead | | | | | |
| Wages | 7,800 | 7,800 | 7,800 | 7,800 | 31,200 |
| Payroll Taxes | - | 11,000 | - | - | 11,000 |
| Office Expenses | - | - | - | 1,875 | 1,875 |
| Homeowners Assoc Expenses | - | - | 7,000 | - | 7,000 |
| Legal | - | - | - | - | - |
| Financial Consulting | - | - | - | - | - |
| Accounting/MIS/Tax | - | - | - | - | - |
| Insurance | 5,000 | - | 5,000 | - | 10,000 |
| Utility Deposit | 17,000 | - | - | - | 17,000 |
| Contingency | 20,000 | 10,000 | 10,000 | 10,000 | 50,000 |
| Interest on DIP Loan | - | - | - | 78,000 | 78,000 |
| Loan Restructuring/Attorney Fees | - | - | - | 75,000 | 75,000 |
| **Total Disbursements** | 186,800 | 63,800 | 322,700 | 265,675 | 838,975 |
| **Net Cash Flow** | (132,800) | (63,800) | (322,700) | (265,675) | (784,975) |
| Advance (Payment) on DIP Loan | - | - | 251,833 | 265,675 | 517,508 |
| **Ending Cash** | 134,667 | 70,867 | | | |
| **Loan Balance** | 10,418,780 | 10,418,780 | 10,670,612 | 10,936,287 | 10,936,287 |

Four week cash flow budget ending 3-30-07 v2.xls