IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: | Case Number: 07 B 03856 |
| J.S. II, L.L.C., et al | Chapter: 11 |
| Debtors. | Judge: Jacqueline P. Cox |

**AMENDED MEMORANDUM OPINION ON
DEBTORS' APPLICATION FOR AUTHORITY TO EMPLOY
TABET DIVITO & ROTHSTEIN AS SPECIAL LITIGATION COUNSEL**

Pending before this court is Debtors' Application for Authority to Employ the Tabet Divito & Rothstein law firm ("TDR") as Special Litigation Counsel to represent the Debtors in litigation pending in state court. Debtors' application drew an objection from Thomas Snitzer and the Snitzer Family, L.L.C., the Plaintiffs and Counter-Defendants in the litigation. The court heard oral argument from all interested parties on March 8, 2007 and April 2, 2007. For the reasons indicated below, the application is granted.

**Background**

Debtors J.S. II, L.L.C. ("J.S. II"), River Village I, L.L.C. ("River Village"), River Village West, L.L.C. ("River Village West") and KND Investments ("KND") filed for protection under Chapter 11 of the Bankruptcy Code ("Code") on March 1, 2007. On March 8, 2007 an order was entered allowing the Debtors' estates to be jointly administered pursuant to Federal Rules of Bankruptcy Procedure 1015(b), which allows joint administration of the estates of 2 or more related debtors.

The Debtors were organized to acquire, develop, finance and sell industrial and residential real estate located on the near south side of Chicago, Illinois ("Chicago"). Their main venture is Bridgeport Village, a development of 115 homes along the south branch of the Chicago River. The

1

Debtors own 3 industrial properties in the area which they lease to various lessees. They also have an option to purchase additional real estate on the near south side of Chicago.

Debtor J.S. II was formed in 1997; it owns the Bridgeport Village real estate. It is a manager-managed Illinois limited liability company; its members are John J. Kinsella, Sid Diamond and Thomas Snitzer.

Debtor River Village I was formed in 1998; it serves as the project's development agent. It is a manager-managed Illinois limited liability company; its members are Kinsella Investments, L.P. ("Kinsella L.P."), Diamond Family Partnership, L.L.C. ("Diamond L.L.C."), Thomas Snitzer and the Snitzer Family L.L.C. ("S.F.L.L.C.") (collectively "the Snitzer Parties"). In exchange for Thomas Snitzer's agreement to serve as manager of River Village I and the Bridgeport Village Project, Kinsella L.P. and Diamond L.L.C. agreed to give the Snitzer Parties a membership interest in River Village I. Thomas Snitzer acted as River Village I's manager until he was enjoined from interfering with the management and control of the Project in a June 2005 state court order.

Debtor River Village West was formed in 2001; its purpose includes acting as the rental agent for the Bridgeport Village Project. It is a manager-managed Illinois limited liability company. Its members are Kinsella L.P., Diamond L.L.C., Thomas Snitzer and S.F.L.L.C. Thomas Snitzer managed this entity until he was enjoined by the June 2005 court order from interfering with the management and control of the Project.

Debtor KND was formed in 2005; it is a manager-managed Illinois limited liability company. It serves as lessor for space at the Debtors' three industrial properties. J.S. II is the sole member of KND.

Debtors' principals John Kinsella and Sid Diamond claim to have provided 100% of the Debtors' capital in the amount of $7.5 million. They claim that they loaned the Debtors $920,000 and personally guaranteed up to $14.6 million of the Debtors' bank debt. They also claim that they

have pledged $4.7 million in personal assets as security for the Debtors' bank debt. As provided by the Project's agreements, Thomas Snitzer and S.F.L.L.C. have contributed no capital to any of the Debtors, have not signed any personal guaranties and have not pledged any personal assets as security for the Debtors' obligations.

In 2003 a subcontractor complained about safety issues. Thomas Snitzer assured Kinsella and Diamond that he had investigated the concerns and found that there were no problems. Between May 2002 and November 2004 the City of Chicago (the "City") issued 78 Stop Work Orders, most for work performed contrary to what was allowed by permits issued by the City. The City discovered numerous building code violations, including the following: many homes were missing a required means of egress from the third floor; garage rooftop decks had been constructed without permits or verification that they were structurally adequate and neither Thomas Snitzer nor the Project's construction manager had obtained a general contractor's license or bond.

The City shut down the Project in November 2004 for the various permit and building code violations. Allegedly, City officials lifted the Stop Work Orders after Thomas Snitzer promised to address the City's concerns. Allegedly, Snitzer later refused to meet with City officials and never told Kinsella and Diamond about the shutdown. In January 2005, the City shut down construction at the site a second time. As a result the Project's initial lender, Bank of America, declared the Project's loan in default. It is alleged that Thomas Snitzer did not inform Kinsella and Diamond of this situation and that they learned of it from press reports.

Kinsella and Diamond discovered that many homes had safety violations; that unpaid subcontractors filed mechanics liens on portions of the Project; that obligations totaling $2 million were not reflected on the books; that various lawsuits were filed against the Debtors; that rental revenues were transferred out of certain accounts and that premiums had not been paid on the Project's liability insurance policy. In addition, many homeowners complained that Thomas Snitzer failed to complete construction "punch list items", an industry term for problems discovered after a homeowner takes possession.

Diamond and Kinsella succeeded in having the City forego suing any of the Debtors in Housing Court. Thomas Snitzer responded to their intervention by suing them in a state court Chancery action seeking to enjoin their interference with his management of the Project. Kinsella and Diamond filed a multi-count counterclaim against the Snitzer Parties:

- Counts I, III and IV: Counts I, III and IV of the Counterclaim seek the statutory expulsion of the Snitzer Parties from the Debtors pursuant to Section 35-45 of the Illinois Limited Liability Company Act on the basis of their wrongful conduct, breach of the operating agreement and material breach of duty.

- Count II: Count II of the Counterclaim seeks declaratory relief with respect to the 2004 Memorandum of Understanding that granted Snitzer a membership interest in J.S. II.

- Count V: Count V of the Counterclaim alleges that Snitzer breached the Project entities' operating agreements by failing to provide access to financial documents, by making major decisions without seeking approval of the other members, by failing to exercise ordinary prudence in discharging his duties as manager and by failing to discharge his duties as manager in good faith.

- Count VI: Count VI of the Counterclaim alleges that Snitzer breached the 2004 Memorandum of Understanding by failing to provide required financial documents, by failing to act in good faith with respect thereto and by failing to make distributions for tax years 2003 and 2004 to allow the members to pay their taxes.

- Count VII: Count VII of the Counterclaim alleges that Snitzer breached his fiduciary duties to the Project entities by engaging in grossly negligent, reckless, or intentional conduct, failing to exercise ordinary prudence in discharging his duties as manager of the Project entities, failing to discharge his duties as manager in good faith, failing to manage the Project entities in accordance with applicable laws and refusing to meet with the other members of the Project entities to allow the business of the Project to be conducted as required by the operating agreement.

See Verified Statement of John J. Kinsella in Support of the Debtors' Chapter 11 Petitions and Initial Motions and Applications, page 10 (07 B 03856: Doc. 67, Exhibit 1).

The state court enjoined the Snitzer Parties from interfering with the management and control of the Project and from acting as the manager of River Village I, River Village West and J.S. II. Diamond and Kinsella were given authority by that court to act on behalf of the Debtors to obtain financing, to act to resolve the Project's safety, building codes and punch list issues and to complete construction and sale of the homes then underway.

In River Village West, L.L.C. v. Peoples Gas Light & Coke Co. (04 cv 3392) filed on May 13, 2004 in the District Court for the Northern District of Illinois, Thomas Snitzer attempted to block settlement of environmental litigation between the Debtors and Peoples Gas. Thomas Snitzer wanted to place the Pitney Option (obtained as part of the settlement) into an entity controlled solely by him. An emergency motion was filed in state court seeking authority to settle the matter, and to place the option in J.S. II, the entity that commenced the litigation. The state court ruled in Kinsella and Diamond's favor.

Later litigation with Peoples Gas resulted in the state court finding:

> "Mr. Snitzer had an equal vote with Kinsella and Diamond in terms of litigation matters concerning Peoples and Dial, which has gone by the wayside. He chose not to do so. He chose to take his own action by filing lawsuits without the knowledge of Kinsella and Diamond, without the knowledge of the lawyer hired to negotiate with Peoples. And these lawsuits, in my opinion, had a bearing on the ability of the venture to negotiate and finalize a settlement with Peoples. As such, it is my opinion that Mr. Snitzer violated his fiduciary duties."

See Transcript of Proceedings, January 10, 2007, Snitzer vs. Kinsella Investments LP, at 8:2 - 8:13 (07 B 03856: Doc. 18, Exhibit D & Doc. 67, Exhibit 1).

## 11 U.S.C. § 327

Section 327 of the Bankruptcy Code provides for the employment of professionals. It authorizes a trustee or debtor in possession to employ professionals, such as attorneys, " that do not hold or represent an interest adverse to the estate, and that are disinterested persons." 11 U.S.C. § 327(a). An exception to section 327(a) is found in section 327(e). Section 327(e) allows the trustee, or as here, a debtor in possession, with court approval, to employ, for a specified special purpose,

5

other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if such is in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.[1] See L.G. Petroleum, L.L.C. v. Fenasci (In re West Delta Oil Co., Inc.), 432 F.3d 347, 354 (5th Cir. 2005); Film Ventures Int'l, Inc. v. Asher (In re Film Ventures Int'l, Inc.), 75 B.R. 250, 252 (B.A.P. 9th 1987); In re LaRosa, — B.R. —, 2007 WL 654387 (Bankr. N.D. W. Va. Feb. 28, 2007).

The key difference between employment under section 327(a) and employment under section 327(e) is that the conflict of interest standard in section 327(e) is more relaxed than the standard embodied in section 327(a). See DeVlieg-Bullard, Inc. v. Natale (In re DeVlieg, Inc.), 174 B.R. 497, 503 (N.D. Ill. 1994). There is no requirement under section 327(e) that special counsel be disinterested.[2] See Film Ventures Int'l, 75 B.R. at 252. Compare 11 U.S.C. §§ 327(a), 101(14) & 11 U.S.C. § 327(e). The purpose of section 327(e) is to "allow counsel who cannot meet the disinterested requirement of § 327(a) [to] nevertheless render valuable services to the debtor in matters where counsel has no adverse interest." In re Tidewater Mem'l Hosp., Inc., 110 B.R. 221, 227 (Bankr. E.D. Va. 1989)

---

[1]Section 327(e) states, in total:

> The trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

11 U.S.C. § 327(e).

[2]The term "disinterested person" means a person that—
(A) is not a creditor, an equity security holder, or an insider;
(B) is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and
(C) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

11 U.S.C. § 101(14).

The requirements of section 327(e) are strict and appointed special counsel "should be free of the slightest personal interest which might be reflected in their decisions concerning matters of the debtor's estate or which might impair the high degree of impartiality and detached judgment expected of them during the course of administration." West Delta Oil Co., Inc., 432 F.3d at 355 (citing In re Consolidated Bancshares, Inc., 785 F.2d 1249, 1256 & n.6 (5th Cir. 1986)). See also In re Envirodyne Indus., Inc., 150 B.R. 1008, 1018 (Bankr. N.D. Ill. 1993). Section 327(e) "serves the important policy of avoiding an unnecessary duplication of services at the expense of the estate." In re NRG Resources, Inc., 64 B.R. 643, 647 (W.D. La. 1986)(relying on Neville v. Eufaula Bank & Trust Co. (In re U.S. Golf Corp.), 639 F.2d 1197, 1201-02 (5th Cir.1981)). See also In re AroChem Corp., 181 B.R. 693, 698 (Bankr. D. Conn. 1995)("Public policy considerations require court supervision to assure that the services of a professional person employed to seek and collect property for the estate will not be compromised by divided loyalty.")[3]

Rule 2014(a) of the Federal Rules of Bankruptcy Procedure requires any applying professional to set forth "to the best of the applicant's knowledge", in both the application for employment and an accompanying verified statement, all known connections of the applicant with the "debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee."[4] Fed. R.

---

[3] This purpose is clearly reflected in the legislative history of section 327(e):

> The subsection will most likely be used when the debtor is involved in complex litigation, and changing attorneys in the middle of the case after the bankruptcy case has commenced would be detrimental to the progress of that other litigation.

S. Rep. 95-989, at 38-39 (1978) (reprinted in 1978 U.S.C.C.A.N. 5787,5824 - 5825) & H.R. Rep. 95-595, at 328 (1978)(reprinted in 1978 U.S.C.C.A.N. 5963, 6285). Employment under section 327(e) is not limited to attorneys currently representing the debtor in the matter at issue.

[4] Rule 2014(a) states:

> An order approving the employment of attorneys, accountants, appraisers, auctioneers, agents, or other professionals pursuant to § 327, § 1103, or § 1114 of the Code shall be made only on application of the trustee or committee. The application shall be filed and, unless the case is a chapter 9 municipality case, a copy of the application shall be transmitted by the applicant to the United States trustee. The application shall state the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any

7

Bankr. Pro. 2014(a). The purpose of this rule is to give the courts an opportunity to discern whether an applicant's interests are adverse to the bankruptcy estate's interests. See In re Black & White Cab Co., 175 B.R. 24, 27 (Bankr. E.D. Ark. 1994). Courts that have analyzed this rule have consistently held that although Rule 2014(a) does not expressly require supplemental disclosure, there is an implied duty of continual disclosure imposed on the professional. See e.g., In re Metropolitan Environmental, Inc., 293 B.R. 871, 887 (Bankr. N.D. Ohio 2003); In re Tomczak, 283 B.R. 730, 734-35 (Bankr. E.D. Wis. 2002); In re United Co. Fin. Corp., 241 B.R. 521, 529-530 (Bankr. D. Del. 1999); In re Granite Partners, L.P., 219 B.R. 22, 35 (Bankr. S.D.N.Y. 1998); In re C & C Demo, Inc., 273 B.R. 502, 507 (Bankr. E.D. Tex. 2001); In re Weaver Potato Chip Co., Inc., 243 B.R. 737, 740 (Bankr. D. Neb. 2000); In re Keller Fin. Serv. of Fla, 243 B.R. 806, 813 (Bankr. M.D. Fla.1999). "Though this provision allows the fox to guard the proverbial hen house, counsel who fail to disclose timely and completely their connections proceed at their own risk because failure to disclose is sufficient grounds to revoke an employment order and deny compensation." Kravit, Gass & Weber v. Michel (In re Crivello), 134 F.3d 831, 836 (7th Cir. 1998). See also Rome v. Braunstein, 19 F.3d 54, 59 (1st Cir. 1994)("Absent the spontaneous, timely and complete disclosure required by section 327(a) and Fed. R. Bankr. P. 2014(a), court-appointed counsel proceed at their own risk.")

The Snitzer Parties object to the retention of TDR to pursue and to defend the state court litigation. They allege that TDR has not represented the Debtors in that litigation, that instead TDR represents Kinsella and Diamond individually in that litigation and because of that, their interests are adverse to the Debtors. They also allege that appointment of TDR is not in the best interest of the estate.

### Tabet Divito & Rothstein's prior representations

---

proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee. The application shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

8

Section 327(e) requires that an attorney seeking employment "has represented the debtor". Although a couple of courts have found this not to be a pre-requisite to employment under section 327(e), the general consensus amongst the courts that have addressed this issue is that the special counsel applicant must be found to have represented the debtor at some point prior to the commencement of the bankruptcy case. See, e.g., Film Ventures Int'l, Inc., 75 B.R. at 252 (§ 327(e) permits post-petition representation by debtor's pre-petition attorney for special purpose); In re Johnson, 1994 WL 163911, at *1 (N.D. Cal. April 14, 1994) ("This statute allows the bankruptcy trustee to hire, for limited purposes, counsel who formerly represented (or presently represent) the debtor."); Pennsylvania Water Works Supply Co. v. Bucks County Bank & Trust Co., 1991 WL 161473* 5 & n. 2 (E.D. Pa. August 19, 1991) (noting that section 327(e) only applies to an attorney that represented a debtor before the bankruptcy was commenced); Mcespierson Inc. v. Strategic Telecom Inc., 202 B.R. 845, 850 (D. Del. 1996)(holding that language of § 327(e) is clear and unequivocal, and under a plain reading of that section, the appointed attorney must have previously represented the debtor); Black & White Cab Co., Inc., 175 B.R. at 26 (finding that applicant's representation of debtor in an unrelated matter met the representation requirement under section 327(e)). The statute does not require that the attorney have previously represented the debtor in the matter or litigation in issue.

According to Attorney Michael Rothstein's affidavit, TDR has represented various Debtors in 5 separate matters since 2005:

1) TDR has represented Kinsella Investments L.P., individually and derivatively on behalf of River Village I, L.L.C. and River Village West, L.L.C.; Diamond Family L.L.C., individually and derivatively on behalf of River Village I, L.L.C. and River Village West, L.L.C.; John J. Kinsella and Sid Diamond in the litigation against Thomas A. Snitzer and Snitzer Family LLC entitled Snitzer, et al., v. Kinsella Investments L.P. et al., in the Chancery Division of the Circuit Court of Cook County, Illinois Case No. 05 CH 07598.

2) TDR represented River Village I and J.S. II as co-counsel in the litigation entitled South Branch, L.L.C. v. River Village I, L.L.C. and J.S. II, L.L.C., in the Chancery Division of the Circuit Court of Cook County, Illinois Case No.

9

02 CH 656.

3)  TDR represented River Village I in a wage claim action entitled Kennedy v. River Village I, L.L.C. in the Fair Labor Standards Division of the Department of Labor, Wage Claim No. 05-003837.

4)  TDR initially represented River Village I in the litigation entitled Wallin, et al. v. River Village I, L.L.C. and J.S. II, L.L.C., in the First Municipal District of the Circuit Court of Cook County, Illinois Case No. 05 M1 137433.

5)  TDR represented River Village I in the negotiation of a settlement with Andrew Tack in the litigation entitled Tack v. River Village I, L.L.C., et al, in the United States District Court for the Northern District of Illinois, Case No. 05 C 6241 concerning unpaid compensation.

See Supplemental Verified Declaration of Michael I. Rothstein Pursuant to Bankruptcy Rule 2014(a) in Support of Debtors' Application to Employ Tabet Divito & Rothstein L.L.C. as Special Litigation Counsel (07 B 03856: Doc. 67, Exhibit 2).

The Snitzer Parties assert in their objection to TDR's employment that "TDR has nominally served as counsel on behalf of Debtors for Kinsella and Diamond's derivative claims . . . ." See Snitzer's Objections to "Debtors'" Application To Appoint Tabet, et al as Counsel, page 2 lines 9-10 (Doc. 56). This admission by Thomas Snitzer that TDR represented the Debtors as well as Kinsella and Diamond and Mr. Rothstein's assertions show that the prior representation element of section 327(e) has been satisfied.

### Best Interest of the Estate

An attorney's employment as special counsel under section 327(e) must be in the best interest of the bankruptcy estate. An applicant must establish that there is an actual need for the applicant's services based upon a real and actual threat to the estate. See In re Duque, 48 B.R. 965, 974-75 (S.D. Fla. 1984); LaRosa, — B.R. —, 2007 WL 654387 at 4 (citing Ferrara & Hantman v. Alvarez (In re Engel), 124 F.3d 567, 575 (3d Cir. 1997)). In addition, the need for special counsel must be for the benefit of the estate and not merely for the personal benefit of the debtor. Id. at 975. This benefit is "gauged by needs of the estate and whether it is directly related to the debtor in possession's

performance of duties under the bankruptcy code." LaRosa, — B.R. —, 2007 WL 654387 at 4 (citing Engel).

This litigation does not pose a threat, *per se*, against the estate. Each side of the litigation is suing on the Debtors' behalf. If the Debtors were required to obtained new counsel, however, it would more than likely result in the state court litigation moving at a slower pace than if TDR was permitted to resume where it left off in state court when the bankruptcy case was filed. There is no question that TDR is familiar with the facts and issues surrounding the state court litigation. Hiring new counsel would cause the estate to incur expenses to bring new counsel up to date on the causes. It is in the estates' interest to avoid this expense. See e.g., DeVlieg, Inc., 175 B.R. at 502 (noting that law firm had high degree of familiarity with the case and evidentiary materials and having to duplicate the attorneys' efforts with new counsel would be at a substantial expense to the estate). See generally In re French, 139 B.R. 485, 489 (Bankr. D.S.D. 1992)(noting that section 327(e) permits the utilization of prior counsel's special knowledge and experience for the benefit of the estate).

### Are the interests of Kinsella and Diamond adverse to the interests of the Debtors?

While the Bankruptcy Code does not define the phrase, "represent or hold any interest adverse to the debtor or the debtor's estate", the Seventh Circuit Court found that a nearly identical phrase used in section 327(a)— "hold or represent an interest adverse to the estate"— meant:

> (1) to possess or assert any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or
> (2) to possess a predisposition under circumstances that render such a bias against the estate.

Crivello, 134 F.3d at 835 (citing In re Roberts, 46 B.R. 815, 827 (Bankr. D. Utah 1985)). See also West Delta Oil Co., Inc., 432 F.3d at 356 (same); In re AroChem Corp., 176 F.3d 610, 623 (2d Cir. 1999)(same). The purpose of the no "adverse interest" requirement is to ensure that special counsel is able to objectively advise the client, which in this instance is the debtor in possession. See DeVlieg-Bullard, Inc., 174 B.R. at 502 & n.7. As noted by the Fifth Circuit in West Delta Oil Co.,

11

Inc., the critical element in making this determination is whether an "adverse interest" exists. See 432 F.3d at 356.

The "adverse interest" referenced in section 327(e) refers to either an actual or a reasonably probable conflict of interest. See AroChem, 181 B.R. at 700. However, conflicts based purely on conjecture or mere speculation do not necessarily warrant an attorney's disqualification as section 328(c) of the Code can be used as a safeguard to protect estates if potential conflicts ripen into actual adverse interests. See id. See also In re Standard Color Photo, Inc., 98 B.R. 135, 138 (Bankr. D. Conn. 1989).[5] That section allows the court to disallow TDR's fee application if TDR's interest is found to be in conflict with the estates' interest. As the bankruptcy court in In re Leslie Fay Cos., Inc. concluded:

> Rather than worry about the potential/actual dichotomy it is more productive to ask whether a professional has "either a meaningful incentive to act contrary to the best interests of the estate and its sundry creditors-an incentive sufficient to place those parties at more than acceptable risk-or the reasonable perception of one." In re Martin, 817 F.2d at 180-81. In other words, if it is plausible that the representation of another interest may cause the debtor's attorneys to act any differently than they would without that other representation, then they have a conflict and an interest adverse to the estate.

175 B.R. 525, 533 (Bankr. S.D.N.Y. 1994).

Snitzer asserts that the interests of Kinsella and Diamond are in conflict with the Debtors' interests based on Snitzer's claims against Kinsella and Diamond alleging mismanagement, commingling of funds and failure to return a $2.5 million loan to the Debtors. Snitzer asserts these claims on behalf of the estate against Kinsella and Diamond. Kinsella and Diamond claim to be suing Snitzer on behalf of the Debtors. It is alleged to be impossible for TDR to represent the

---

[5]Section 328(c) states:

Except as provided in section 327(c), 327(e), or 1107(b) of this title, the court may deny allowance of compensation for services and reimbursement of expenses of a professional person employed under section 327 or 1103 of this title if, at any time during such professional person's employment under section 327 or 1103 of this title, such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed.

Debtors independently of its professional loyalties to Kinsella and Diamond as plaintiffs, since the Chancery action includes claims against Kinsella and Diamond on behalf of the Debtors.[6]

The Debtors assert that they seek to employ TDR for the limited purpose of prosecuting the Debtors' claims against Snitzer and that they are not seeking to employ TDR to defend the claims against Kinsella and Diamond. The Debtors also assert that fees incurred by TDR relating to the defense of Snitzer's claims will be paid by the Additional Litigation Parties (parties other than the Debtors; "ALP")—not the Debtors' estates.

The United States Trustee did not object to the employment of TDR pursuant to section 327(e) and suggested that only a Trustee appointed under section 1104 can be totally independent as Kinsella and Diamond would control any other law firm appointed in these matters. TDR has accepted the United States Trustee's suggestion that TDR allocate its fees between the Debtors and the Additional Litigation Parties, Kinsella and Diamond. The Debtors and the ALPs have agreed that where TDR's fees and costs are incurred solely on behalf of the Debtors or solely on behalf of the ALPs, TDR will bill 100% of its fees and costs to the parties for whose benefit the services were provided. TDR must maintain separate billing accounts for the Debtors and the other parties it represents in this matter.

This is a no-lose situation for the Debtors. Each side is suing derivatively on the Debtors' behalf. If the Kinsella and Diamond parties prevail, the Debtors will recover on those parties' derivative claims. If the Snitzer Parties prevail, the Debtors will recover on those parties' derivative

---

[6] As long as each side sues derivatively on behalf of the Debtors, this situation will adhere. A solution may be for the state court judge to sever and hold separate trials on the personal and derivative claims. Resolution of the personal claims first would then inform resolution of the derivative claims. If Kinsella and Diamond prevail on their claims against the Snitzer entities, the Debtors would prevail on the derivative claims of Kinsella and Diamond against the Snitzer entities. If the Snitzer entities prevail against Kinsella and Diamond on their personal claims, the Debtors would prevail on the Snitzer Parties' derivative claims against Kinsella and Diamond.

claims. Regardless of who prevails in the state court action, the Debtors will recover.[7]

The Kinsella and Diamond parties could assert similar conflict of interest concerns against the attorneys who represent the Snitzer Parties, challenging their loyalty and ability to represent the Debtors, albeit derivatively, while representing the Snitzer Parties who are alleged to be responsible for the Debtors' demise.

## 11 U.S.C. § 328

It bears noting that retention under section 327(e) is merely the first step if TDR wishes to obtain compensation for services rendered as special counsel. See LaRosa, — B.R. —, 2007 WL 654387 at 4. Although section 330 of the Code is the mechanism by which professional persons such as special counsel can obtain compensation for services rendered, section 328(c) allows courts to deny the allowance of compensation for services and reimbursement of expenses "if, at any time during such professional person's employment under section 327 . . ., such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed." In the event an adverse interest develops during its representation of the Debtors as special counsel, it would be in TDR's best interest to timely disclose it to the court or risk total denial of any compensation award. See Crivello, 134 F.3d at 836 ("counsel who fail to disclose timely and completely their connections proceed at their own risk because failure to disclose is sufficient grounds to revoke an employment order and deny compensation."). See also West Delta Oil Co., Inc., 432 F.3d at 354 (court can deny compensation for services where attorney holds an interest adverse to the debtor or the estate); Rome, 19 F.3d at 59 ("Absent the spontaneous, timely and complete disclosure required by section

---

[7]The court is cognizant of the fact that once the bankruptcy case was commenced, all pre-petition derivative actions filed on the Debtors' behalf became property of their bankruptcy estates. See Kennedy v. Venrock Assoc., 348 F.3d 584, 589 (7th Cir. 2003); 11 U.S.C. § 541(a). To the extent *any* of the claims at issue in the state court action were brought on the Debtors' behalf and are not claims that could have been brought solely by Snitzer, Kinsella or Diamond, they fall under the control of the Debtors in Possession. In fact, Snitzer may not have authority to pursue the Debtors' derivative claims against Kinsella and Diamond, and likewise regarding Kinsella and Diamond's authority to sue on behalf of the Debtors.

327(a) and Fed. R. Bankr. P. 2014(a), court-appointed counsel proceed at their own risk."); AroChem Corp., 176 F.3d at 628 (concluding that a bankruptcy judge "has at his disposal an armamentarium of permissible remedies, including ... disqualification [and] disallowance of all or some fees" if the judge were to later perceive a materially adverse interest on the part of special counsel); Film Ventures Int'l, 75 B.R. at 252 (special counsel had an affirmative duty to disclose all connections with the Debtor). [8]

The "Debtors' Application for Authority to Employ Tabet Divito & Rothstein as Special Litigation Counsel" is GRANTED.

**Dated:** May 30, 2007

**ENTERED:**

/s/ J.P.Cox

Jacqueline P. Cox
United States Bankruptcy Judge

---

[8] As an aside, the estate is additionally protected by the fiduciary duty TDR will owe as attorneys to its clients—the Debtors. Attorneys hired to represent a legal entity owe a fiduciary duty of loyalty to the entity—not the individuals that control it—under Illinois law. See Kopka v. Kamensky and Rubenstein, 821 N.E.2d 719, 727 (Ill. App. Ct. 2004). See also In re Winthrop, 848 N.E.2d 961, 972-973 (Ill. 2006)("An attorney's fiduciary relationship with his client is one of "undivided fidelity."); Illinois Rules of Professional Conduct, Rule 1.13(a)("A lawyer employed or retained by an organization represents the organization acting through its duly authorized constituents."); ABA Model Rules of Professional Conduct, Rule 1.13(a)(same). But see Illinois Rule of Professional Conduct, Rule 1.13(c)("A lawyer representing an organization may also represent any of its directors, officers, employees, members, shareholders or other constituents, subject to the provisions of Rule 1.7."). In the event TDR violates its fiduciary duty as counsel to the Debtors in order to either advance its own individual interests or the individual interests of Kinsella or Diamond, it risks becoming a defendant in a legal malpractice action. See TIG Ins. Co. v. Giffin Winning Cohen & Bodewes, P.C., 444 F.3d 587, 590-591 (7th Cir. 2006); Tri-G, Inc. v. Burke, Bosselman & Weaver, 856 N.E.2d 389, 394-395 (Ill. 2006).