# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | **Chapter 11** |
| | ) | |
| **JS II, LLC, *et al.*,** | ) | **Case No. 07-03856** |
| | ) | **(Jointly Administered)** |
| | ) | |
| Debtors. | ) | **Hon. Jacqueline P. Cox** |

## STIPULATION AND FINAL ORDER AUTHORIZING SECURED POSTPETITION FINANCING ON A SUPERPRIORITY BASIS PURSUANT TO 11 U.S.C. § 364

Upon the motion (the "Motion") dated March 5, 2007 of J.S. II, L.L.C. ("JS II"),

River Village I, L.L.C. ("River Village I"), River Village West, L.L.C. ("River Village West"),

and KND Investments, L.L.C. ("KND," and together with JS II, River Village I, and River

Village West, the "Debtors"), (a) pursuant to Section 364(c) of title 11 of the United States Code,

11 U.S.C. §§ 101, et seq. (as amended, the "Bankruptcy Code") and Rules 2002, 4001(c) and

9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), seeking this

Court's authorization for the Debtors, inter alia, (i) to assume JS II's existing loan agreements as

modified in certain respects in order for the Debtors to obtain postpetition financing (the

"Postpetition Financing") up to an aggregate principal amount of $14,431,800.00 plus accrued

interest (the "Commitment") from American Chartered Bank (the "Lender"); (ii) to grant the

Lender, pursuant to Bankruptcy Code §§ 364(c) and 364(d), liens on the Debtors' property to

secure the Debtors' obligations under the Postpetition Financing; and (iii) to grant the Lender

priority in payment with respect to such obligations over any and all administrative expenses of

the kinds specified in Bankruptcy Code §§ 503(b) and 507(b), other than as described below; and

(b) seeking a preliminary hearing (the "Preliminary Hearing") on the Motion to consider the

Debtors' request for interim relief; and (c) requesting that a final hearing be scheduled by this

Court to consider the entry of a final order authorizing the Postpetition Financing on a final

basis; this Court having (i) conducted a preliminary hearing (the "Preliminary Hearing") on the

Motion on March 8, 2007, (ii) entered an interim order ("March 14 Order") pursuant to

Bankruptcy Rule 4001 on or about March 14, 2007 authorizing the Debtors to borrow up to an

aggregate of $950,000 plus accrued interest from the Lender under the Postpetition Financing;

(iii) entered a second interim order ("April 18 Order") pursuant to Bankruptcy Rule 4001 on or

about April 18, 2007 authorizing the Debtors to borrow up to an additional aggregate of

$1,900,000 plus accrued interest from the Lender under the Postpetition Financing; and (iv)

entered a third interim order ("May 30 Order") pursuant to Bankruptcy Rule 4001 on or about

May 30, 2007 (a) authorizing the Debtors to borrow up to an additional aggregate of $1,176,100

plus accrued interest from the Lender under the Postpetition Financing, and (b) scheduling a final

hearing (the "Final Hearing") to consider the entry of a final order (the "Final Order") on the

Motion; due and sufficient notice of the Motion and the Final Hearing having been given as set

forth below; the Final Hearing on the Motion having been held before this Court; no objections

to the Motion having been filed, or if filed, having been withdrawn, resolved, or overruled; the

Court having considered the Motion and the entire record made at the Preliminary Hearing and

the Final Hearing; and this Court having found good and sufficient cause appearing therefor;

  The Debtors and the Lender STIPULATE for all purposes in this Case (as defined

below), and the Court hereby FINDS (except as otherwise stated in finding paragraphs D and E

below) as follows:

  A.  On March 5, 2007 (the "Filing Date"), the Debtors filed voluntary petitions for

relief with this Court under chapter 11 of the Bankruptcy Code, and thereby commenced the

above-captioned case (the "Case"). The Debtors remain in possession of their property, and they continue to operate and manage their business, as debtors in possession pursuant to Bankruptcy Code §§ 1107 and 1108.

B.      This Court has jurisdiction over the Case and the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. The Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2).

C.      The Lender, as lender, and JS II, as borrower (the "Borrower"), are parties to (i) that certain Loan and Security Agreement, dated as of April 28, 2006 (as amended, supplemented or otherwise modified prior to the commencement of this Case, the "Term Loan Agreement"), (ii) that certain Construction Loan Agreement, dated May 30, 2006 (as amended, supplemented or otherwise modified prior to the commencement of this Case, the "Construction Loan Agreement," and together with the Term Loan Agreement, the "Prepetition Loan Agreements"); and (iii) all collateral and ancillary documents (the "Prepetition Ancillary Documents," and together with the Prepetition Loan Agreements, the "Prepetition Loan Documents"). The maturity date specified in the Construction Loan Agreement and the Borrower's corresponding promissory note to the Lender is May 25, 2007 ("Maturity Date"). The Borrower's failure to pay all unpaid amounts due to the Lender under the Construction Loan Agreement on the Maturity Date would constitute an event of default under both of the Prepetition Loan Agreements. True and correct copies of the Prepetition Loan Agreements and the Prepetition Loan Documents are included in the Appendix that the Debtors filed with the Motion and are incorporated herein by reference. Unless otherwise specified, all capitalized terms used but not defined herein shall have the meanings given in the Prepetition Loan Agreements.

D.      Without prejudice to the rights of any other party (but subject to the limitations
described in ordering paragraph 26 below), the Debtors admit that, in accordance with the terms
of the Prepetition Loan Documents, the Borrower is truly and justly indebted to the Lender under
the Prepetition Loan Agreements, without defense, counterclaim or offset of any kind, and that
as of the Filing Date (i) the Borrower was liable to the Lender in the aggregate principal amount
of approximately $10,340,294.00 in respect of loans made by the Lender to the Borrower
pursuant to the Prepetition Loan Agreements (plus attorneys' fees, costs and interest accrued and
unpaid thereon) (the "Prepetition Indebtedness") and (ii) as of the Filing Date, the Debtors, in
consideration of the Postpetition Financing to be made under the Commitment, waive and release
any and all causes of action and claims against the Lender and its agents, representatives, assigns
and successors. The provisions of this paragraph D constitute a stipulation by the Debtors and
not a finding by the Court, subject to the provisions of ordering paragraph 26 of this Order.

E.      Without prejudice to the rights of any other party (but subject to the limitations
described in ordering paragraph 26 below), the Debtors further admit that by reason of the
Prepetition Loan Documents, the Prepetition Indebtedness is secured by enforceable mortgages,
security interests, and collateral assignments of leases and rents granted by the Borrower to the
Lender upon and in the Borrower's interest in real estate commonly known as (i) 1500 West 33rd
Street, Chicago, Illinois, (ii) 3333 South Iron Street, Chicago, Illinois, (iii) 1501 South Hillock,
Chicago, Illinois; (iv) 2814 South Lock, Chicago, Illinois; and (v) Bridgeport Village, Chicago,
Illinois, all as more specifically described in the Prepetition Loan Documents (together with any
reserve accounts maintained by the Lender in connection with the Prepetition Indebtedness, the
"Prepetition Collateral"). The provisions of this paragraph E constitute a stipulation by the

Debtor and not a finding of the Court, subject to the provisions of ordering paragraph 26 of this Order.

F.      Without prejudice to the rights of any other party (but subject to the limitations described in ordering paragraph 26 below), the Debtors further admit that they do not have sufficient available sources of working capital and financing to carry on the operation of their business without the Postpetition Financing. The ability of the Debtors to maintain business relationships with their vendors and contractors, to complete construction projects, continue development activities, and otherwise finance their operations, is essential to the Debtors' continued viability. In addition, the Debtors' need for financing is immediate and critical. In the absence of the Postpetition Financing, the continued operation of the Debtors' business would not be possible and serious and irreparable harm to the Debtors and their estate would occur. The preservation, maintenance and enhancement of the value of the Debtors' assets are of the utmost significance and importance to a successful reorganization of the Debtors under chapter 11 of the Bankruptcy Code.

G.      Given the Debtors' current financial condition and capital structure, the Debtors are unable to obtain unsecured credit allowable under Bankruptcy Code § 503(b)(1) as an administrative expense. Financing on a postpetition basis is not otherwise available without the Debtors granting, pursuant to Bankruptcy Code § 364(c)(1), claims having priority over any and all administrative expenses of the kinds specified in Bankruptcy Code §§ 503(b) and 507(b), other than as described in paragraph 13 below, and securing such indebtedness and obligations with the liens, mortgages, security interests, and collateral assignments of leases and rents security interests described below pursuant to Bankruptcy Code §§ 364(c) and 364(d).

H.     Notice of the Final Hearing and the relief requested in the Motion has been given to (i) the Office of the United States Trustee, (ii) the creditors holding the 20 largest unsecured claims against the Debtors; (iii) known holders of prepetition liens against the Debtors' property; and (iv) counsel for the official committee of unsecured creditors (the "Committee") appointed in the Case.

I.     Based on the record presented to this Court by the Debtors, it appears (and the Debtors and the Lender have stipulated) that the Postpetition Financing has been negotiated in good faith and at arm's-length between the Debtors and the Lender, and any credit extended and loans made to the Debtors pursuant to this Order shall be deemed to have been extended, issued or made, as the case may be, in good faith within the meaning of Bankruptcy Code § 364(e).

J.     Based on the record before this Court, it appears (and the Debtors and the Lender have stipulated) that the terms of this Order, including, without limitation, the terms of the Postpetition Financing, are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

K.     This Court concludes that entry of this Order is in the best interests of the Debtors' estates and creditors as its implementation will, among other things, allow for the continuation of the Debtors' development and construction activities and a continuation of services to the Debtors, which are necessary to sustain the operation of the Debtors' existing business and enhance the Debtors' prospects for a successful reorganization or a sale of their assets.

Based upon the foregoing findings, stipulations, and conclusions, and upon the record made before this Court at the Preliminary Hearing and the Final Hearing, and good and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED** that:

1.    Motion Granted. The Motion is granted on a final basis, subject to the terms and conditions set forth in this Order.

2.    Authorization. The Debtors are expressly authorized and empowered to (a) borrow money from the Lender on a secured and superpriority administrative basis pursuant to the terms of this Order, (b) perform their obligations pursuant to the provisions of this Order, and (c) enter into such agreements, instruments and documents (collectively, if any, the "DIP Loan Documents") as may be necessary or required to evidence their obligations to the Lender, to consummate the terms and provisions of the Motion and this Order and to evidence perfection of the liens and security interests to be given to the Lender pursuant hereto and thereto, including, without limitation, such amendments or modifications of the Prepetition Loan Documents as may be necessary to evidence the postpetition borrowings authorized herein and the assumption or payoff of the Prepetition Indebtedness (subject to the provisions of ordering paragraph 26 hereto); provided that such DIP Loan Documents are consistent with this Order. All postpetition loans and all other indebtedness and obligations incurred on or after the Filing Date by the Debtors to the Lender pursuant to this Order and the DIP Loan Documents (including principal, accrued and unpaid interest, and costs and expenses) are referred to herein as the "DIP Indebtedness," and, together with the Prepetition Indebtedness, as the "Indebtedness."

3.    Borrowing. Subject to the terms and conditions of this Order and the DIP Loan Documents, the Lender will make postpetition loans to the Debtors, in each case in an

aggregate amount not to exceed the Commitment. In addition to the payoff of the Prepetition
Indebtedness, the proceeds of any such postpetition loans shall be used to fund budgeted
expenditures in accordance with the provisions of ordering paragraph 15 hereof.

Notwithstanding the foregoing, ~~if the Lender in its sole discretion~~ (*qx*) advances funds or other
extensions of credit in excess of these limitations (or any other limitations in the DIP Loan
Documents), such advances (and any other indebtedness in excess of such amount) shall
constitute DIP Indebtedness entitled to the benefits of the DIP Loan Documents and this Order,
(*cox*) *only upon entry of a future court order authorizing such further advance.* (*Bx*)

4.    Existing Events of Default. Nothing herein or in any of the DIP Loan
Documents shall constitute or be deemed to constitute a waiver by the Lender of any existing or
future Events of Default (including, without limitation, the Events of Default arising from the
commencement of this Case). Without prejudice to, or waiver of, the Lender's rights and
remedies against the Debtors in respect of any Events of Default other than the Existing Defaults
(as defined below), the Lender agrees to forbear from foreclosing its liens on any DIP Collateral
(as defined below) or otherwise taking enforcement action against the Debtors based solely on
any Event of Default which occurred prior to the entry of this Order and of which the Lender had
actual knowledge as of such date (collectively, the "Existing Defaults"); provided that such
forbearance shall terminate upon the earlier of (i) the occurrence of any Event of Default other
than an Existing Default or (ii) the Loan Payment Date (as defined below).

5.    Interest, Fees, Costs and Expenses. All Indebtedness shall bear interest at
the Prime Rate (as defined in the Prepetition Loan Documents) plus two percent (2%) per
annum. Interest shall be payable monthly in arrears on the 25th day of each month. All fees
payable under the Prepetition Loan Agreements shall be applicable to the Postpetition Financing.
The Lender will also be entitled to assess and collect a loan fee in the amount of $72,159.00. On

a monthly basis, the Lender shall be entitled to recover all of its reasonable out-of-pocket expenses, including reasonable attorneys' fees, costs and expenses incurred in connection with the Indebtedness to the extent provided in the Prepetition Loan Agreements. On a monthly basis, the Lender shall provide counsel for the Debtors, counsel for any official committee of unsecured creditors appointed in connection with this Case ("Committee"), counsel for any person requesting notice of all matters, and the United States Trustee with a detailed invoice of all fees, costs and expenses for which reimbursement is sought. Each party served shall have ten (10) business days within which to file an objection with the Court and bring the matter on for a hearing on notice to the Debtor, any Committee, the United States Trustee, the Lender and all other parties requesting notice of all matters. To the extent the Court enters a final order finding that Lender is undersecured, all interest and fee payments with respect to Prepetition Indebtedness shall be applied to the principal amount of such Prepetition Indebtedness to the extent Lender is undersecured.

6.    <u>Termination of Postpetition Credit</u>. The Lender's willingness to make loans hereunder and any agreed upon forbearance hereunder shall immediately and automatically terminate (except as the Lender may otherwise agree in writing in its sole discretion), all Indebtedness shall be immediately due and payable in cash (except as the Lender may otherwise agree in writing in its sole discretion), and the Lender shall have the enforcement rights set forth in paragraph 11 hereof (except as the Lender may otherwise agree in writing in its sole discretion) upon the earliest to occur of the following (the "<u>Loan Payment Date</u>"):

(i)    the six month anniversary of the Filing Date, subject to a six month extension thereafter if (a) no Events of Default (other than the Existing Defaults) are in existence, and (b) the Debtors consent to, and this Court approves, such interest rate changes and additional fees as the Lender deems appropriate for such extension (the "<u>Loan Expiration Date</u>");

(ii)  the date of final indefeasible payment and satisfaction in full in cash of the Indebtedness;

(iii)  the effective date of any confirmed plan of reorganization in the Case;

(iv)  the consummation of the sale or other disposition of all or substantially all of the assets of the Debtors;

(v)  the occurrence of any violation by the Debtors of this Order (including, but not limited to, a violation of the covenants set forth in ordering paragraph 16 of this Order), or any Event of Default (as defined in the Prepetition Loan Agreements) other than the Existing Defaults;

(vi)  the dismissal of the Case or the conversion of the Case into a case under Chapter 7 of the Bankruptcy Code;

(vii)  a trustee or an examiner with enlarged powers (beyond those set forth in §§ 1106(a)(3) and (4) of the Bankruptcy Code) relating to the operation of the business of the Debtors is appointed in the Case without the prior written consent of the Lender (which consent may be withheld in its sole discretion), or the Debtors apply for, consent to, or acquiesce in, any such appointment without the prior written consent of the Lender (which consent may be withheld in its sole discretion);

(viii)  this Order is stayed, reversed, vacated, amended or otherwise modified in any respect without the prior written consent of the Lender (which consent may be withheld in its sole discretion);

(ix)  this or any other Court enters an order or judgment in the Case modifying, limiting, subordinating or avoiding the priority of any Indebtedness or the perfection, priority or validity of the Lender's prepetition or postpetition liens on any DIP Collateral;

(x)  the Debtors file any application for approval or allowance of, or any order is entered approving or allowing, any administrative expense claim in the Case, having any priority over, or being pari passu with, the superadministrative priority of the Indebtedness;

(xi)  an order is entered in the Case granting relief from the automatic stay of Section 362 of the Bankruptcy Code to any holder or holders of a lien on any material collateral in allowing such holder or holders to foreclose or otherwise realize upon such liens; or

(xii)  any motion or application is filed by or on behalf of the Debtors in the Case seeking the entry of an order, or an order is entered in the Case, approving any subsequent debtor in possession facility for borrowed money or other extensions of credit unless such subsequent facility and such order expressly provide for the indefeasible payment and complete satisfaction in full in cash to the Lender of all Indebtedness prior

to, or concurrently with, any initial borrowings or other extensions of credit under such subsequent facility.

7.    Security for Indebtedness.  The Lender is hereby granted as security for the repayment of all amounts of the DIP Indebtedness, pursuant to §§ 364(c)(2) and 364(c)(3) of the Bankruptcy Code, a valid and perfected first lien, subject only to Prior Claims (as defined below), on the Prepetition Collateral and all other property of the Debtor, except for any claims or causes of action (including, without limitation, any causes of action arising under chapter 5 of the Bankruptcy Code) belonging to the Debtors or their estates (collectively with all proceeds and products of any or all of the foregoing, the "DIP Collateral").  The Lender is further granted as security for the repayment of all amounts of the DIP Indebtedness, pursuant to § 364(d) of the Bankruptcy Code, a senior lien on the DIP Collateral to the extent that the DIP Indebtedness exceeds the Prepetition Indebtedness.  As used herein, the term "Prior Claims" shall mean (i) the prepetition liens and security interests of the Lender and (ii) any non-avoidable valid, enforceable and perfected liens and security interests in favor of any person or entity on or in the assets of the Debtors which existed on the Filing Date and are not subject to § 552(a) of the Bankruptcy Code, but only to the extent such liens and security interests are superior in priority to the liens and security interests of the Lender, after giving effect to any existing subordination or intercreditor arrangements.  Other than the first priority liens and security interests in favor of the Lender pursuant to the DIP Loan Documents and this Order and the Prior Claims, no other claims, liens or security interests whether prior to or pari passu with the claims, liens or security interests of the Lender shall attach to the DIP Collateral in this or any subsequent or superseding case (including, without limitation, any conversion of the Case to a case under Chapter 7 of the Bankruptcy Code or any other proceeding related hereto or thereto, the "Successor Case") without the express written consent of the Lender (which consent may be withheld in its sole

discretion)).  The Lender at its option may release at any time from its liens and security interests

any assets determined by the Lender to have a risk of environmental liabilities which the Lender

in its sole discretion deems unacceptable.  In addition, except to the extent otherwise expressly

set forth in paragraph 26 of this Order, or in a written instrument, agreement or other document

executed by one or more duly authorized representatives of the Lender, no liens or security

interests granted to the Lender, and no claim of the Lender, shall be subject to subordination to

any other liens, security interests or claims under § 510 of the Bankruptcy Code or otherwise.

       8.     [Intentionally Deleted].

       9.     Perfection of New Liens.  All liens and security interests on or in the DIP

Collateral granted to the Lender by this Order and the DIP Loan Documents shall be, and they

hereby are, deemed duly perfected and recorded under all applicable federal or state or other

laws as of the date hereof, and no notice, filing, mortgage recordation, possession, further order,

landlord or warehousemen lien waivers or other third party consents or other act, shall be

required to effect such perfection; provided, however, that notwithstanding the provisions of

§ 362 of the Bankruptcy Code, the Lender may, at its sole option, file or record or cause the

Debtor to obtain any third party consents or execute, file or record, at the Debtors' expense, any

such notices of liens and security interests, mortgages and other similar documents as the Lender

may require.  If the Lender, in its sole discretion, shall elect for any reason to cause to be

obtained any third party consents or cause to be filed or recorded any such notices, financing

statements, mortgages or other documents with respect to such security interests and liens, or if

the Lender, in accordance with the DIP Loan Documents, shall elect to take possession of any

DIP Collateral, all such third party consents, financing statements or similar documents or taking

possession shall be deemed to have been filed or recorded or taken in this Case as of the

commencement of this Case but with the priorities as set forth herein. The Lender may (in its discretion) but shall not be required to, file a certified copy of this Order in any filing or recording office in any county or other jurisdiction in which the Debtor has real or personal property and such filing or recording shall be accepted and shall constitute further evidence of perfection of the Lender's interests in the DIP Collateral.

10.     Waiver. The Debtors and their estates (and any party in interest acting on behalf of the Debtors) hereby irrevocably waive, and are barred from asserting or exercising any right, (a) without the Lender's prior written consent (which may be withheld in its sole discretion), or (b) without prior indefeasible payment and satisfaction in full in cash of the Indebtedness: (i) to grant or impose, or request that the Court grant or impose, under § 364 of the Bankruptcy Code or otherwise, liens on or security interests in any DIP Collateral, which are pari passu with or superior to the Lender's liens on and security interests in such DIP Collateral; or (ii) to modify or affect any of the rights of the Lender under this Order or any DIP Loan Documents by any order entered in the Case or any Successor Case.

11.     Modification of Automatic Stay; Other Remedies.

(a)     Except as set forth in subparagraph (b) of this paragraph, which governs any action by the Lender to foreclose on its liens on any DIP Collateral or to exercise any other default-related remedies (other than those specifically referenced in the next sentence), the automatic stay pursuant to § 362 of the Bankruptcy Code is hereby vacated as to the Lender to permit it to perform in accordance with, and exercise, enjoy and enforce its rights, benefits, privileges and remedies pursuant to this Order and the other DIP Loan Documents without further application or motion to, or order from, the Court, and regardless of any change in circumstances (whether or not foreseeable), neither § 105 of the Bankruptcy Code nor any other

provision of the Bankruptcy Code or applicable law shall be utilized to prohibit the Lender's exercise, enjoyment and enforcement of any of such rights, benefits, privileges and remedies. The Lender is hereby granted leave, among other things, to (i) receive and apply payments of the Indebtedness and collections on and proceeds of the Prepetition Collateral and the DIP Collateral to the Indebtedness in the manner specified in this Order and the DIP Loan Documents, (ii) file or record any financing statements, mortgages or other instruments or other documents to evidence the security interests in and liens upon the DIP Collateral, (iii) to the extent permitted by § 506(b) of the Bankruptcy Code, charge and collect any interest, fees, costs, and expenses and other amounts accruing at any time under the DIP Loan Documents or this Order as provided therein, (iv) to give the Debtors any notice provided for in any of the DIP Loan Documents or this Order, and (v) upon the occurrence of an Event of Default other than any Existing Default, or upon the Loan Payment Date, and without application or motion to, or order from the Court or any other court, (A) terminate the Prepetition Loan Agreements and the Postpetition Financing under this Order and the other DIP Loan Documents, (B) declare all Indebtedness immediately due and payable, and require that all contingent Indebtedness (if any) be cash collateralized or terminated without liability to the Lender, (C) revoke the Debtor's right, if any, under this Order and/or the other DIP Loan Documents to use cash collateral and (D) cease making loans or other extensions of credit and/or suspend or terminate any obligation of the Lender to make loans or other extensions of credit under the DIP Loan Documents or this Order.

(b)      Notwithstanding the occurrence of an Event of Default or the Loan Payment Date, the automatic stay shall remain in full force and effect subject to further order of this Court and the Lender's right to request relief from the automatic stay under § 362(d) of the Bankruptcy Code. However, upon the occurrence of (i) any Event of Default other than (A) any

Existing Defaults or (B) any Event of Default based solely on the occurrence of the Loan

Expiration Date or on the failure to pay Indebtedness declared to be immediately due and

payable as of the Loan Expiration Date, or (ii) a Loan Payment Date other than the Loan

Expiration Date, the Lender shall be entitled (i) to file an emergency motion for relief from the

automatic stay for the purpose of foreclosing or otherwise enforcing its liens on any or all of the

DIP Collateral and/or to exercise any other default-related remedies under the DIP Loan

Documents, this Order or applicable law, and (ii) to obtain an expedited hearing on such motion

upon three (3) days' notice to counsel for the Debtors, counsel for any Committee and the U.S.

Trustee. The Lender shall be entitled to such relief from the automatic stay upon a showing only

that one or more Events of Default (other than (i) any Existing Defaults or (ii) any Event of

Default based solely on the occurrence of the Loan Expiration Date or the failure to pay

Indebtedness declared to be immediately due and payable as of the Loan Expiration Date) have

occurred and are then continuing or that a Loan Payment Date (other than the Loan Expiration

Date) have occurred. Upon the entry of an order granting the Lender relief from the automatic

stay to enforce its liens or to exercise any other default-related remedies, (i) the Lender may

exercise any remedies available to the Lender under this Order, the Prepetition Loan Agreements

and other Prepetition Loan Documents or applicable law, including to foreclose on the

Prepetition Collateral and the DIP Collateral, (ii) provided that the Lender in its sole discretion

has made available to the Debtor (through additional Postpetition Loans or by consenting to

Debtors' use of cash collateral) sufficient funds to pay the costs thereof, the Debtors shall

cooperate with the Lender in connection with any enforcement action by the Lender by, among

other things, (A) providing access to its premises to representatives of the Lender, (B) providing

the Lender access to their books and records, (C) performing all other obligations set forth in the

Prepetition Loan Agreements, the Prepetition Loan Documents, this Order and/or the other DIP Loan Documents, and (D) taking reasonable steps to safeguard and protect the Prepetition Collateral and the DIP Collateral until the Lender can make adequate provision to protect and safeguard the Prepetition Collateral and the DIP Collateral, and the Debtors shall not otherwise interfere or encourage others to interfere with the Lender's enforcement of its rights. In addition, upon the occurrence of any Event of Default (as determined by the Lender or by the Court) other than any Existing Default or any Event of Default based solely on the failure to pay Indebtedness declared to be immediately due and payable as of the Loan Expiration Date, or upon a Loan Payment Date other than the Loan Expiration Date, and provided that the Lender in its sole discretion has made available to the Debtors (through additional postpetition loans or by consenting to the Debtors' use of cash collateral) sufficient funds to pay the costs thereof, the Debtors shall, at the request of the Lender and pursuant to the provisions of Section 363 of the Bankruptcy Code, use commercially reasonable efforts to sell or otherwise dispose of the DIP Collateral on terms and conditions acceptable to the Lender and shall turn over the proceeds of such sale(s) or other disposition(s) to the Lender for application to the Indebtedness in accordance with the provisions hereof and the DIP Loan Documents.

      12.    Priority Claims  Subject to the Carve-Out described in ordering paragraph 13 below, the DIP Indebtedness shall have the highest administrative priority under § 364(c)(1) of the Bankruptcy Code, and shall have priority over all other costs and expenses of administration of any kind, including those specified in, or ordered pursuant to, §§ 105, 326, 330, 331, 503(b), 507(a), 507(b) or 726 or any other provision of the Bankruptcy Code or otherwise (whether incurred in the Case or any Successor Case), and shall at all times be senior to the rights of the Debtors, any successor trustee or estate representative in the Case or any Successor

Case. Nothing in this Order shall constitute the consent by the Lender to the imposition of any costs or expense of administration or other charge, lien, assessment or claim (including, without limitation, the Commitment) against the Lender, its claims or its collateral under § 506(c) of the Bankruptcy Code or otherwise.

          13.    Carve-Out.

        (a)    Subject to the remaining provisions of this paragraph, the Lender's liens on and security interests in the DIP Collateral and its administrative claims under § 364(c)(1) and 507(b) of the Bankruptcy Code shall be subject only to (a) the payment of any unpaid fees payable pursuant to 28 U.S.C. § 1930, (b) the aggregate allowed unpaid fees and expenses payable under §§ 330 and 331 of the Bankruptcy Code to professional persons retained by the Debtor pursuant to Court order (collectively, the "Debtor Professionals") in an amount not to exceed the sum of (i) the aggregate amounts set forth in the Budget (as defined in ordering paragraph 15 below) for fees and expenses incurred prior to the occurrence of an Event of Default (other than any Existing Default), and (ii) $25,000 for fees and expenses incurred subsequent to an Event of Default (other than any Existing Default), and (c) the aggregate allowed unpaid fees and expenses payable under §§ 330 and 331 of the Bankruptcy Code to professional persons retained by the Committee pursuant to Court order (collectively, the "Committee Professionals") in an amount not to exceed the sum of (i) the aggregate amounts set forth in the Budget (as defined in ordering paragraph 15 below) for fees and expenses incurred prior to the occurrence of an Event of Default (other than any Existing Default), and (ii) $10,000 for fees and expenses incurred subsequent to an Event of Default (other than any Existing Default) (the amounts specified in clauses (a), (b), and (c) of this paragraph, including the limitations therein, collectively, the "Carve-Out").

(b)      Notwithstanding anything to the contrary in this Order or the DIP Loan Documents, the prepetition and postpetition liens and security interests and the administrative priority claims of the Lender shall be senior to, and no proceeds of Indebtedness (including any prepetition retainer funded by the Lender pursuant to the Prepetition Loan Documents) nor any Prepetition Collateral or DIP Collateral (or proceeds thereof) may be used to pay, any and all claims for services rendered by the Debtor Professionals or the Committee Professionals in connection with the assertion of or joinder in (but not investigation of) any claim, counterclaim, action, proceeding, application, motion, objection, defense or other contested matter, the purpose of which is to seek or the result of which would be to obtain any order, judgment, determination, declaration or similar relief: (x) invalidating, setting aside, avoiding or subordinating, in whole or in part, the Indebtedness or the liens and security interests of the Lender in the Prepetition Collateral or the DIP Collateral; or (y) preventing, hindering or otherwise delaying, whether directly or indirectly, the exercise by the Lender of any of its rights and remedies under the Prepetition Loan Agreements, the Prepetition Loan Documents, this Order and/or the DIP Loan Documents or the Lender's enforcement or realization upon any of the liens on or security interests in any Prepetition Collateral or DIP Collateral.

14.      Cash Collateral Procedures.  From and after the date of the entry of this Order, all cash proceeds of any Prepetition Collateral or DIP Collateral shall be applied against the Prepetition Indebtedness and the DIP Indebtedness as provided in this Order and the Prepetition Loan Documents.

15.      Use of Loan and Collateral Proceeds.  Except as otherwise provided in ordering paragraphs 14, 17 and 18 hereof, the proceeds of any loans or other extensions of credit made by the Lender to the Debtor pursuant to this Order and the DIP Loan Documents, all

proceeds of DIP Collateral and all cash collateral shall be used only as follows: (a) prior to the
Loan Payment Date, pursuant to the budget attached hereto as Exhibit A (as may be amended or
supplemented from time to time with the Lender's advance consent (and with at least five (5)
business days of advance notice and a corresponding opportunity to file an objection with this
Court provided to counsel for the United States Trustee, the Committee and other parties in
interest, including Thomas J. Snitzer and Snitzer Family LLC), the "Budget") for the payment of
the Debtors' expenses incurred in the ordinary course of business, or any fees and expenses of
the Debtor Professionals and the Committee Professionals, and any portion of the Indebtedness,
and (b) on or after the Loan Payment Date, first, for the payment of any amounts constituting any
part of the Carve-Out; second, for the payment of the Debtors' expenses incurred in the ordinary
course of business in accordance with, and to the extent of the remaining term of, any applicable
Budget; third, for indefeasible payment in full in cash of the Indebtedness; and fourth, upon
payment in full thereof in cash, then for the payment of any allowed and non-Budgeted
administrative expenses or other claims in accordance with the provisions of the Bankruptcy
Code and orders of this Court. Funds borrowed under this Order shall be used by the Debtors in
accordance with this Order. Notwithstanding the foregoing, the Debtors shall be (x) deemed to
be in compliance with the Budget so long as its total cash disbursements, on a rolling four-week
basis, are less than 125% of the amount provided for in the Budget for each respective four-week
period (collectively, the "Variance"); and (y) permitted to pay expenses in the ordinary course of
business in accordance with the Budget and the Variance unless and until this Court enters a
subsequent order to the contrary. The extension of Postpetition Financing shall not be construed
as a commitment to continue to provide Postpetition Financing after the occurrence of an Event

of Default (other than the Existing Defaults) or beyond the Loan Payment Date, regardless of whether the entire Commitment has been expended.

16.    Covenants.  The Debtors shall timely comply with all of the covenants set forth in the Prepetition Loan Agreements, the Prepetition Loan Documents, this Order and the other DIP Loan Documents.

17.    Application of Collateral Proceeds.  All proceeds of Prepetition Collateral and DIP Collateral shall be applied (A) first, to the Prepetition Indebtedness (in such order as determined by the Lender in its sole discretion) until paid in full, and (B) second, to the DIP Indebtedness (in such order as determined by the Lender in its sole discretion).  Except to the extent otherwise agreed to by the Lender and the Debtors, the Debtors shall not have the right to direct the manner of application of any payments to the Lender or any other receipts by the Lender of proceeds of any of the Prepetition Collateral or DIP Collateral other than in the manner set forth in this ordering paragraph and the Prepetition Loan Agreements.

18.    Non-Ordinary Course Dispositions.  No sale, lease or other disposition of Prepetition Collateral or DIP Collateral outside the ordinary course of business (including any auction or other similar sales) may be done without the Lender's consent or by order of the Court.

19.    Books and Records.  The Debtors shall permit the Lender and any authorized representatives designated by the Lender (including, without limitation, its auditors, appraisers and financial advisors) to visit and inspect any of the properties of the Debtors, including the Debtors' financial and accounting records, and to make copies and take extracts therefrom, and to discuss the Debtors' affairs, finances and business with such Debtors' officers and independent public accountants, at such reasonable times during normal business hours and

as often as may be reasonably requested. Without limiting the generality of the foregoing, the Debtors shall promptly provide to the Lender and the Lender's designated representatives any information or data reasonably requested to monitor the Debtors' compliance with the covenants in the Prepetition Loan Agreements and the provisions of the DIP Loan Documents and this Order and to perform appraisals or other valuation analyses of any property of the Debtor.

20.    _Authorized Signatories_. The signature of John J. Kinsella or the Debtors' attorneys shall bind the Debtors, and no other approval shall be necessary.

21.    _The Lender's Reservation of Rights; No Waiver_. The Lender does not waive, and expressly reserves, any and all claims, defenses, rights and remedies it has pursuant to any or all of the Prepetition Loan Documents, the DIP Loan Documents, the Bankruptcy Code and/or other applicable law against the Debtors and any officer, director, employee, agent or other representative of the Debtor. In addition, the rights and obligations of the Debtors and the rights, claims, liens, security interests and priorities of the Lender arising under this Order are in addition to, and are not intended as a waiver or substitution for, the rights, obligations, claims, liens, security interests and priorities granted by the Debtors, in their prepetition capacity, under the Prepetition Loan Documents. Without limiting the generality of the foregoing, the Lender may petition this Court for any such additional protection it may reasonably require with respect to the Prepetition Indebtedness, the DIP Indebtedness or otherwise, and nothing in this Order constitutes a finding with respect to the adequacy of the protection of the Lender's interests in the Prepetition Collateral.

22.    _Order Binding on Successors_. The provisions of this Order shall be binding upon and inure to the benefit of the Lender, the Debtors, and their successors and assigns (including any trustee or other estate representative appointed as a representative of the Debtors'

estate or of any estate in any Successor Case); provided, however, that the terms of this Order

shall not be binding on a chapter 7 trustee except with respect to loans made and expenses

incurred prior to the appointment of such chapter 7 trustee. Except as otherwise explicitly set

forth in this Order, no third parties are intended to be or shall be deemed to be third party

beneficiaries of this Order or the DIP Loan Documents.

   23. Effect of Dismissal, Conversion or Substantive Consolidation. If the Case

is dismissed, converted, otherwise superseded or substantively consolidated, the Lender's rights

and remedies under this Order and the DIP Loan Documents shall be and remain in full force and

effect as if the Case had not been dismissed, converted, superseded or substantively consolidated.

Furthermore, notwithstanding any such dismissal, conversion, supercission or substantive

consolidation, all of the terms and conditions of this Order, including, without limitation, the

liens and the priorities granted hereunder, shall remain in full force and effect; provided,

however, that a subsequently appointed chapter 7 trustee shall not be bound by this Order with

respect to loans made after the appointment of such chapter 7 trustee.

   24. Releases and Validation of Prepetition Indebtedness and Liens; Allowance

of Secured Claim. Subject only to the right of the Committee and any other party in interest to

object on the terms and conditions set forth in ordering paragraph 26 below, the Debtors and

their estates, hereby: (a) release and discharge the Lender, together with its affiliates, agents,

attorneys, officers, directors and employees from any and all claims and causes of action arising

out of, based upon or related to, in whole or in part, any of the Prepetition Loan Documents, any

aspect of the Prepetition relationship between the Lender and the Debtors, or any other acts or

omissions by the Lender in connection with any of the Prepetition Loan Documents or its

Prepetition relationship with the Debtors; (b) waive any and all defenses (including, without

limitation, offsets and counterclaims of any nature or kind) as to the validity, perfection, priority, enforceability and nonavoidability (under §§ 510, 544, 545, 547, 548, 550, 551, 552 or 553 of the Bankruptcy Code or otherwise) of the Prepetition Indebtedness and the security interests in and liens on the Prepetition Collateral in favor of the Lender (which liens and security interests are first priority subject only to the Prior Claims); and (c) agree, without further Court order and without the need for the filing of any proof of claim, to the allowance of the prepetition claims of the Lender pursuant to §§ 502 and 506 of the Bankruptcy Code on account of the Prepetition Indebtedness as secured claims according to the Lender's books and records, the principal amount of which is $10,340,294.00 as of the Filing Date, plus accrued prepetition and postpetition interest, fees, expenses and other amounts chargeable under the Prepetition Loan Documents.

25. The Lender's Relationship with the Debtors. Solely by virtue of making decisions to make any Loans or other extensions of credit to the Debtors, in administering any Loans or other extensions of credit, or taking any other actions reasonably related to this Order or the Indebtedness or the DIP Loan Documents, the Lender shall have no liability to any third party and shall not be deemed to be in control of the operations of the Debtors or to be acting as a "controlling person," "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such term, or any similar terms, are used in the Internal Revenue Code, the United States Comprehensive Environmental Response, Compensation and Liability Act as amended, or any similar Federal or state statute), and the Lender's relationship with the Debtors shall not constitute or be deemed to constitute a joint venture or partnership of any kind between the Lender and the Debtors.

26.    <u>Objections by Parties in Interest</u>. Except as set forth in finding paragraphs D and E, in ordering paragraph 24 and in this ordering paragraph, all of the provisions of this Order shall be final and binding on the Debtors and all creditors and other parties in interest. The Committee and any other party in interest other than the Debtors shall have until June 27, 2007 to serve upon counsel for the Lender, objections or complaints respecting (a) the claims, causes of actions and defenses released by the Debtors pursuant to paragraph 24 above or (b) the validity, extent, priority, avoidability, or enforceability of the Prepetition Indebtedness or the Lender's prepetition liens on and prepetition security interests in the Prepetition Collateral. In the event that no objections or complaints are filed with this Court and served upon counsel of record for the Lender within the time period set forth above (unless such time period is extended for cause shown after notice and a hearing upon motion filed prior to June 27, 2007), the provisions of paragraph 24 of this Order shall become final and binding on all such parties.

27.    [<u>Intentionally Deleted</u>].

28.    <u>Guaranties</u>. As evidenced by their signatures below, the guarantors of the Prepetition Indebtedness have acknowledged and agreed that (a) their guaranties of the Prepetition Indebtedness (i) are unimpaired by this Order and shall remain in full force and effect, and (ii) shall be deemed to apply to the DIP Indebtedness to the same extent as the Prepetition Indebtedness, and (b) they will execute new guaranties on the DIP Indebtedness in forms and in substance reasonably acceptable to the Lender.

29.    <u>Effect of Modification of Order</u>. The Debtors shall not, without the Lender's prior written consent, seek to modify, vacate or amend this Order or any DIP Loan Documents. If any of the provisions of this Order are hereafter modified, vacated or stayed by subsequent order of this or any other Court, such stay, modification or vacatur shall not affect the

validity of any Indebtedness outstanding immediately prior to the effective time of such stay,

modification or vacation, or the validity and enforceability of any lien, priority, right, privilege or

benefit authorized hereby with respect to any such Indebtedness. Notwithstanding any such stay,

modification or vacatur, any Indebtedness outstanding immediately prior to the effective time of

such modification, stay or vacatur shall be governed in all respects by the original provisions of

this Order, and the Lender shall be entitled to all the rights, privileges and benefits, including,

without limitation, the security interests and priorities granted herein, with respect to all such

Indebtedness.

30.     Safe Harbor.  The Court has considered and determined the matters

addressed herein pursuant to its powers under the Bankruptcy Code, including the power to

authorize the Debtors to obtain credit on the terms and conditions upon which the Debtors and

the Lender have agreed. Thus, each of such terms and conditions constitutes a part of the

authorization under § 364 of the Bankruptcy Code, and is, therefore, subject to the protections

contained in § 364(e) of the Bankruptcy Code.

31.     Objections Overruled or Withdrawn.  All objections to the entry of this

Order have been withdrawn or overruled, *except the objection that the Lender should*

(cox) *not be allowed to loan the Debtors more than is authorized, $14,431,800.00*

(ax)

32.     Controlling Effect of Order.  To the extent any provisions in this Order

conflict with any provisions of the Motion, any Prepetition Loan Documents or any DIP Loan

Documents, the provisions of this Order shall control.

33.     Order Effective.  This Order shall be effective as of the date of its entry by

the Court.

ENTER:

Dated: ~~June 28, 2007~~ *July 1, 2007*

_____
United States Bankruptcy Judge

AGREED TO:

JS II, LLC, *et al.*

By:_____
One of its attorneys

   Steven B. Towbin (#2848546)
   Peter J. Roberts (#6239025)
   Shaw Gussis Fishman Glantz
     Wolfson & Towbin LLC
   321 North Clark Street, Suite 800
   Chicago, Illinois 60610
   (312) 541-0151

American Chartered Bank

By:_____
One of its attorneys

   Edward J. Burke
   Mary Ann Murray
   Burke Burns & Pinelli, Ltd.
   Suite 4300
   70 West Madison Street
   Chicago, Illinois 60602
   (312) 541-8600

_____
John J. Kinsella, guarantor

_____
Sidney Diamond, guarantor

ENTER:

Dated:  June  28, 2007

_____
United States Bankruptcy Judge

AGREED TO:

JS II, LLC, *et al.*                                    American Chartered Bank

By:_____          By:_____
    One of its attorneys                      One of its attorneys

Steven B. Towbin (#2848546)            Edward J. Burke
Peter J. Roberts (#6239025)            Mary Ann Murray
Shaw Gussis Fishman Glantz             Burke Burns & Pinelli, Ltd.
   Wolfson & Towbin LLC                Suite 4300
321 North Clark Street, Suite 800      70 West Madison Street
Chicago, Illinois 60610                Chicago, Illinois 60602
(312) 541-0151                         (312) 541-8600

_____       _____
John J. Kinsella, guarantor            Sidney Diamond, guarantor

ENTER:

Dated: June 28, 2007

_____
United States Bankruptcy Judge

AGREED TO:

JS II, LLC, *et al.*

American Chartered Bank

By:_____
    One of its attorneys

By:_____
    One of its attorneys

    Steven B. Towbin (#2848546)
    Peter J. Roberts (#6239025)
    Shaw Gussis Fishman Glantz
      Wolfson & Towbin LLC
    321 North Clark Street, Suite 800
    Chicago, Illinois 60610
    (312) 541-0151

    Edward J. Burke
    Mary Ann Murray
    Burke Burns & Pinelli, Ltd.
    Suite 4300
    70 West Madison Street
    Chicago, Illinois 60602
    (312) 541-8600

_____
John J. Kinsella, guarantor

_____
Sidney Diamond, guarantor

# EXHIBIT A

## JS II, LLC
### Ten Week Budget Though August 3, 2007

| | 1-Jun-07 | 8-Jun-07 | 15-Jun-07 | 22-Jun-07 | 29-Jun-07 | 6-Jul-07 | 13-Jul-07 | 20-Jul-07 | 27-Jul-07 | 3-Aug-07 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Cash | 37,000 | 37,000 | 37,000 | 37,000 | 37,000 | 37,000 | 37,000 | 37,000 | 37,000 | 37,000 | 37,000 |
| **Cash Receipts** | | | | | | | | | | | |
| Home Sales | - | - | - | - | 855,300 | - | 697,000 | - | - | - | 1,552,300 |
| Rental Income | - | 48,000 | - | - | - | 48,000 | - | - | - | 48,000 | 144,000 |
| Total Receipts | - | 48,000 | - | - | 855,300 | 48,000 | 697,000 | - | - | 48,000 | 1,696,300 |
| **Cash Disbursements** | | | | | | | | | | | |
| Construction Costs | 96,500 | 79,000 | 79,000 | 109,800 | 89,000 | 96,500 | 79,000 | 79,000 | 79,000 | 106,500 | 893,300 |
| Real Estate Taxes | - | - | - | 40,000 | - | - | - | - | - | - | 40,000 |
| Administrative & Overhead | | | | | | | | | | | |
| Wages | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 60,000 |
| Payroll Taxes | - | 6,000 | - | - | - | - | 10,400 | - | - | - | 16,400 |
| Interim Management | 8,100 | 8,100 | 8,100 | 8,100 | 8,100 | 8,100 | 8,100 | 8,100 | 8,100 | 8,100 | 81,000 |
| Office Expenses | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 5,000 |
| Homeowners Assoc Expenses | - | - | 18,300 | - | - | - | - | 18,300 | - | - | 36,600 |
| Legal | 32,000 | 27,000 | - | 115,000 | 27,500 | 2,000 | - | 50,000 | 19,500 | 64,000 | 337,000 |
| Financial Consulting | 28,000 | - | - | - | 20,000 | - | - | - | 15,000 | 17,000 | 80,000 |
| Accounting/MIS/Tax | 5,000 | - | - | - | - | 5,000 | - | - | - | 4,500 | 14,500 |
| Utilities | - | - | 6,000 | - | - | - | - | 6,000 | - | - | 12,000 |
| Insurance | - | - | 7,500 | - | - | - | - | 7,500 | - | - | 15,000 |
| U.S. Trustee Fees | - | - | - | - | - | - | - | 5,750 | - | - | 5,750 |
| Contingency | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 75,000 |
| Interest on DIP Loan | - | - | - | 91,800 | - | - | - | 97,800 | - | - | 189,600 |
| Transfer to Cash Reserve Account | - | - | - | - | 855,300 | - | 697,000 | - | - | - | 1,552,300 |
| Total Disbursements | 183,600 | 134,100 | 132,900 | 378,700 | 1,013,900 | 125,600 | 808,500 | 286,450 | 135,600 | 214,100 | 3,413,450 |
| Net Cash Flow | (183,600) | (86,100) | (132,900) | (378,700) | (158,600) | (77,600) | (111,500) | (286,450) | (135,600) | (166,100) | (1,717,150) |
| Advance on DIP Loan | 183,600 | 86,100 | 132,900 | 378,700 | 158,600 | 77,600 | 111,500 | 286,450 | 135,600 | 166,100 | 1,717,150 |
| Ending Cash | 37,000 | 37,000 | 37,000 | 37,000 | 37,000 | 37,000 | 37,000 | 37,000 | 37,000 | 37,000 | 37,000 |
| Loan Balance | 11,483,600 | 11,569,700 | 11,702,600 | 12,081,300 | 12,239,900 | 12,317,500 | 12,429,000 | 12,715,450 | 12,851,050 | 13,017,150 | 13,017,150 |
| Ending Cash Reserve Account | - | - | - | - | 855,300 | 855,300 | 1,552,300 | 1,552,300 | 1,552,300 | 1,552,300 | 1,552,300 |

Ten week cash flow budget ending 8-03-2007