UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| J.S. II, L.L.C., et al, | ) | Case No. 07 B 3856 |
| | ) | (Jointly Administered) |
| | ) | |
| Debtor. | ) | Judge Jacqueline P. Cox |

MEMORANDUM OPINION ON
DEBTORS' FIRST OMNIBUS OBJECTION AND
RESPONSE OF CENTRAL DOOR DISTRIBUTION, INC.

J.S. II, L.L.C. ("JS II"), River Village I, L.L.C., River Village West, L.L.C. and KND Investments, LLC (collectively the "Debtors") filed petitions for relief under chapter 11 of the Bankruptcy Code ("Code") on March 5, 2007. An order was subsequently entered allowing the Debtors' estates to be jointly administered. Central Door Distributors, Inc. ("CDD"), a creditor, filed a claim against the estate that the Debtors subsequently objected to.

I.   **JURISDICTION**

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. This matter is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A),(B) and (O).

II.   **BACKGROUND**

The facts in this case are not in dispute. The Debtors were organized to develop, finance, and sell Bridgeport Village, a commercial and residential real estate project on the near south side of Chicago. In 2005, CDD entered into a series of contracts to install doors and related hardware for the Bridgeport Village project. When the Debtors filed for bankruptcy relief, they owed CDD $68,208.58. $30,024.91 of this debt was secured by a mechanics' lien on the Debtors' property

located at 1310 West 33rd Street, Chicago, Illinois.

After the Debtors' March 5, 2007 filing date, on April 6, 2007 CDD was sent a Notice of Claims Bar Date Motion which was set for hearing on April 12, 2007. The motion proposed the June 5, 2007 claims bar date. On April 12, 2007, the Bar Date Order fixed June 5, 2007 as the final day to file non-governmental claims against the estate. The Debtors served CDD a copy of the Bar Date Order and Notice of Bar Dates on April 18, 2007. The Order and Notice were addressed to Tom Johnson, Central Door Distribution, Inc., 150 State Street, Calumet City, Illinois 60409. On April 17 and 22, 2007, Debtors published the Bar Date Notice in the Chicago Tribune, a widely circulated newspaper in the greater Chicago area.

On July 2, 2007, after the June 5th claims bar date passed, CDD, through its vice president, Tom Wrzesinski, and not represented by counsel, filed the following with the Clerk of the Bankruptcy Court: a stack of invoices, the mechanics' lien attached to the 1310 West 33rd Street property owned by the Debtors, and two other mechanics' liens on property once held by the Debtors. Shortly after this filing, CDD received a "Request for Additional Information" from the Clerk seeking to have CDD complete a Proof of Claim form. CDD completed the Proof of Claim form and filed it with the Clerk; it was received on July 19, 2007. The Proof of Claim seeks $68,208.58 against the estate, of which CDD claims $60,474.56 is secured. However, CDD concedes that only the $30,024.91 mechanics' lien claim may be secured. The Debtors seek rejection of the claim as a late claim.

At a hearing on the matter, CDD offered the testimony of Thomas Wrzesinski, Vice President of CDD. At the hearing, Mr. Wrzesinski testified that his duties entail making sales calls, distributing work to the factory, setting up deliveries, and managing the business. He also testified

that his post-secondary education consists of one semester of college and that he does not hold any professional licenses. Selling doors and moldings to retailers constitutes approximately 90-95% of CDD's business. Wrzesinski further testified that sales to general contractors are only a small portion of its business. Wrzesinski also testified that CDD supplied doors and trim to the Debtors and entered into a contract with the Debtors in 2006 pursuant to which CDD supplied the Debtors with doors and related items. He then testified that several invoices to the Debtors are unpaid in the amount of $68,208.58. Wrzesinski also testified that he received the Notice of Claims Bar Date Motion on April 10, 2007 and that he did not hire a lawyer at that time. Instead, he believed he would receive information in the future when the claims bar date was set. He testified that he did not receive information regarding the Claims Bar Date, but stated it was likely that Tom Johnson, a salesman for CDD may have. Johnson was listed as the contact for service on the Claims Bar Date Order. However, CDD did not offer any testimony from Johnson regarding whether he actually received the Bar Date Notice. Wrzesinski further stated that he sent copies of the Debtors' unpaid invoices to the Clerk of the Bankruptcy Court in either late June or early July, 2007, intending such to represent its Proof of Claim. He received notice from the Clerk that his claim was incomplete; he then filed the required Proof of Claim[1] form on July 17, 2007. In September, 2007, Wrzesinski testified that he received notice that CDD's claim was disallowed and retained counsel for CDD shortly thereafter.

Debtors filed their First Omnibus Objection to, *inter alia*, CDD's claim as untimely. CDD

---

[1] Fed.R.Bankr.P. 9009 states that "[t]he Official Forms prescribed by the Judicial Conference of the United States shall be observed and used with alterations as may be appropriate." Under its authority, the Judicial Conference requires Form B10 be used to file a proof of claim.

3

retained counsel and filed its response to the First Omnibus Objection seeking relief under Federal Rule of Bankruptcy Procedure 9006; it requests leave to file its late filed proof of claim *nunc pro tunc* to the original claims bar date. Specifically, CDD argues that its untimely filing of its claim was due to "excusable neglect" and that the claim should be allowed.

### III. DISCUSSION

The requirements for filing a proof of claim in a chapter 11 case are set forth in Rule 3003(c) of the Federal Rules of Bankruptcy Procedure. *Pioneer Inv. Services Co. v. Brunswick Assoc. L.P.*, 507 U.S. 380, 382 (1993). This rule allows the bankruptcy court to set the time period for filing proofs of claims. *Id.* The rule also allows the bankruptcy court to extend the time period for cause shown. *Id.* In addition, Rule 9006 empowers a bankruptcy court to allow a late claim if the claimant's failure to timely file resulted from "excusable neglect." *Id.* The creditor bears the burden of proof that a claim was untimely filed as a result of excusable neglect. *In re Nat'l Steel Corp.*, 316 B.R. 510, 515 (Bankr. N.D. Ill. 2004).

The parties in this case do not dispute that CDD's claim was filed late. Both parties also agree that the test for excusable neglect given in *Pioneer Inv. Services Co. v. Brunswick Assoc. L.P.* governs this case. *Pioneer* established a two-part test for determining excusable neglect. *Nat'l Steel Corp.*, 316 B.R. at 515. First, the claimant must show "neglect," which is shown by establishing either circumstances beyond the claimant's control or that the claim was filed late due to inadvertence, mistake, or carelessness of the claimant. *Id.* Second, after neglect is established, the claimant must show that the neglect was "excusable." *Id.* Four factors are weighed to determine whether excusable neglect exists: "(1) the danger of prejudice to the debtor[s]; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether

4

it was within the reasonable control of the [claimant]; and (4) whether the [claimant] acted in good faith." *Id.* The factors are nonexclusive, requiring "an equitable determination of all relevant circumstances surrounding the party's omission." *Id.* (quoting *Pioneer*, 507 U.S. at 395).

The parties herein agree that CDD's filing was late due to "neglect," establishing the first part of the *Pioneer* test. At issue is whether CDD's neglect was "excusable." Applying the first element, danger of prejudice to the Debtors, CDD argues that its claim of $68,208.58 is *de minimus* compared to the total amount of all claims which is almost $32,000,000. CDD contends that allowing its claim would have no perceptible impact on the overall estate. However, the Debtors point out that CDD's claim exceeds the median amount of filed claims by over $24,000. Additionally, the Debtors argue that there currently are no funds available for distribution. This is persuasive because if funds become available for distribution, the creditors who timely filed their claims will receive a diminished distribution if CDD's claim is allowed as timely filed. Since any potential distribution to the other creditors would be affected if CDD's claim is allowed, the likelihood of prejudice to the other creditors exists. This factor weighs in favor of sustaining the Debtors' objection to CDD's claim.

The second factor is the length of delay and its impact on judicial proceedings. There is no specific rule or test to determine whether the amount of time lapsed is deemed "excusable." *Nat'l Steel*, 316 B.R. at 518. This factor must be weighed on a case-by-case basis and balanced with the other factors. *Id.* at 518-19. CDD contends that its claim was filed forty-four days after the bar date and notes that the case is still in the early stages of administration. Conversely, the Debtors assert that sixty-nine days lapsed between the bar date and the date CDD sought Rule 9006 relief. Both parties cite various cases supporting their respective positions regarding lengths of delays in filing

5

claims. *See, e.g., Pioneer*, 507 U.S. at 384 (claim allowed filed twenty days after bar date); *In re Dartmoor Homes, Inc.*, 175 B.R. 659, 662 (Bankr. N.D. Ill. 1994) (claim allowed that was filed approximately two weeks after bar date); *In re O'Shaughenessy*, 252 B.R. 722, 729 (Bankr. N.D. Ill. 2000) (claim allowed three months after plan confirmation); *but see, e.g., In re Kmart Corp.*, 381 F.3d 709, 714-15 (7th Cir. 2004) (claim not allowed where eighty-one days passed between bar date and claimant's filing for relief under Fed.R.Bankr.P 9006 even though claimant initially filed her claim only one day past the bar date).

*Kmart* held that the total lapse of time between the initial Claims Bar Date and the debtor's filing of Rule 9006 relief is an appropriate measure for consideration of excusable neglect analysis. *Kmart*, 381 F.3d at 714. Under *Kmart*, the total length of delay for consideration is the period between the Claims Bar Date and when CDD sought Rule 9006 relief, or sixty-nine days, as asserted by the Debtors. Looking at the cases provided by each party, the length of delay in this case falls somewhere in the middle. At best, this factor taken by itself, favors neither party. However, when juxtaposed against the other factors, it negatively impacts the judicial proceedings and supports sustaining the Debtors' objection.

The next factor for consideration is CDD's reason for filing its claim late. CDD contends this factor favors it because CDD initially proceeded as a *pro se* creditor in this case and was unaware of the complexities involved in this chapter 11 case. According to CDD, it should be excused from the final Bar Date Order because it did not appreciate the significance of the matter. The Debtors counter that the Order applies to CDD regardless of its *pro se* status at the time the Order was entered. The Debtors note that many other creditors in the case, who were individual

6

homeowners, proceeded *pro se* and timely filed their claims.[2] Finally, the Debtors note that CDD acknowledged receiving the Bar Date Motion including the proposed Bar Date Order and Notice. According to the Debtors, this constitutes sufficient knowledge and information with respect to filing claims in this case. The Order was entered April 12, 2007 as indicated in the Motion; CDD could have followed up on the Motion to ascertain the Bar Date. CDD was notified twice that June 5, 2007 was the claims bar date.

When analyzing the reason for delay, not only is the reason for the delay itself considered, but also whether the reason was beyond the claimant's reasonable control. *Nat'l Steel*, 316 B.R. at 517-18. In this case, CDD's argument is not persuasive. CDD is a sophisticated business entity that should have recognized the importance of filing the claim and that it should proceed with the advice of counsel. Also, CDD acknowledges receipt of the Bar Date Motion and does not deny that it received, through its employee Tom Johnson, the Bar Date Notice and the entered Bar Date Order. "One ancillary rule is that inattentiveness to litigation is not excusable." *In re Plunkett*, 82 F.3d 738, 742 (7th Cir. 1996). "Missing a filing deadline because of slumber is fatal." *Id.* The Debtors did all that was required of them under the Code regarding sending notice of the claims bar date. It was CDD's responsibility to investigate and to properly file a claim against the Debtors. *See Nat'l Steel*, 316 B.R. at 518. Whether filing a claim *pro se* or through legal representation was a decision entirely within CDD's discretion. The Bar Date Motion, which CDD admits it received, specifically stated that the Debtors were moving to set a June 5, 2007 claims bar date. This provided ample notice that the June 5th deadline would potentially be the final day to file a claim. Additionally, the

---

[2] Among others, for example, Danielle Hrzic (JS II Claim No. 47) and Janette Maysonett (JS II Claim No. 4).

fact that a CDD employee may have received the entered Bar Date Order and failed to act upon it does not favor CDD. CDD was aware and should have realized the importance of the June 5th deadline and investigated it. Further, court records indicate CDD was served shortly after commencement of the case with Form B9F, titled "Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors and Deadlines," which provides information regarding the meeting of the creditors, the requirements and process of filing a claim, and a proof of claim form.[3] (Dkt. No. 35, pgs. 1-4). CDD was listed on the Certificate of Service attached to the form. (Dkt. No. 35, pg. 5). Its failure to act on the initial notice of the case, the Notice of Claims Bar Date Motion, the Bar Date Order, and the Notice of Bar Dates was entirely within its control. As such, this factor strongly favors sustaining the Debtors' objection.

The last factor to examine is whether CDD acted in good faith. CDD contends it acted in good faith because it attempted to file a proof of claim consisting of past due invoices and mechanics' liens, albeit *after* the claims bar date. Subsequently, the Clerk of the Bankruptcy Court notified CDD that their filing was incomplete and missing the required Proof of Claim form, which CDD filed soon thereafter, indicating cooperation with the claims procedure. On the other hand, the Debtors argue that CDD's failure to obtain counsel before the claims bar date was an act of poor

---

[3] The information provided by this form includes the name of the debtor, case number, contact information for the debtor's attorney, the date of the meeting of the creditors, information regarding deadlines for filing proofs of claims, the address for the Clerk of the Bankruptcy Court, explanations of terms, a proof of claim form, and instructions for completing the proof of claim form. The form further instructs any creditors intending to file a proof of claim to contact the Clerk of the Bankruptcy Court for a proof of claim form if one is not provided. Additionally, at the top of the form, the form states, "You may be a creditor of the debtor. **This notice lists important deadlines.** You may want to consult an attorney to protect your rights." (Form B9F (Alt.), United States Bankruptcy Court, Northern District of Illinois, pg. 1; located in Dkt. No. 35, pg. 1) (emphasis provided).

business judgment lacking any good faith. In this case, CDD received notice of a possible claims date and did not take action until after the date provided therein. As such, CDD's inaction during the pendency of the timeline for filing a claim against the Debtors does not constitute good faith. Therefore, this factor does not favor CDD.

Looking at the factors from *Pioneer* and the circumstances of this case, the *Pioneer* factors favor sustaining the Debtors' objection. In this case, CDD should not be allowed to claim ignorance or have its untimely filing excused because it chose not to obtain legal representation. The claims bar date is integral in facilitating reorgainzations. *Kmart*, 381 F.3d at 715. As the Second Circuit stated in another case:

> A bar order serves the important purpose of enabling the parties to a bankruptcy case to identify with reasonable promptness the identity of those making claims against the bankruptcy estate and the general amount of the claims, a necessary step in achieving the goal of a successful reorganization... If individual creditors were permitted to postpone indefinitely the effect of a bar order [...] the institutional means of ensuring the sound administration of the bankruptcy estate would be undermined.

*Id.* (quoting *In re Hooker Invs., Inc.*, 937 F.2d 833, 840 (2nd Cir. 1991)). Therefore, the Debtors' Objection to CDD's claim is sustained.

## IV.    CONCLUSION

The request of Central Door Distribution, Inc. for leave to file a late claim is denied. The First Omnibus Objection of J.S. II, L.L.C., River Village I, L.L.C, River Village West, L.L.C., and KND Investments, LLC to the claim of Central Door Distribution, Inc. is sustained. The claim of Central Door Distribution, Inc., claim number 84 is Disallowed.

Dated: February 20, 2008

ENTERED:

*Jacqueline P. Cox*

__J P. Cox__

Jacqueline P. Cox
U.S. Bankruptcy Judge