UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| J.S. II, L.L.C., et al., | ) | Case No. 07-3856 |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Hon. Jacqueline P. Cox |

MEMORANDUM OPINION ON DEBTORS' OBJECTION
TO CLAIM OF KATHY ANTUNOVICH

This matter concerns the Objection of the Debtors, J.S. II, L.L.C., River Village I, L.L.C., River Village West, L.L.C., and KND Investments, LLC (collectively, the "Debtors") to the claims of Kathy Antunovich ("Antunovich"), Claim No. 24-2 in the amount of $72,500.00, Claim No. 87 in the amount of $1,044,063.91, and Antunovich's Motion for Leave to Amend Claim No. 24-2 as Claim No. 24-3 in the amount of $145,000.00. The Debtors seek to disallow the claims, to expunge Antunovich's claims, and ask that the motion to amend be denied.

## I. Jurisdiction

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. This matter is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A),(B) and (O).

## II. Background

In March 2006, Antunovich purchased a home at 1300 West 33rd Place, Chicago, Illinois, located in Bridgeport Village, a real estate venture developed by the Debtors. Antunovich purchased this property from a third-party, the original purchaser of the property, not the Debtors. On March 5, 2007, the Debtors filed petitions for relief under chapter 11 of the Bankruptcy Code. As the case progressed, June 5, 2007 was fixed as the claims bar date for non-governmental creditors and interest

627

holders to file their claims. Acting *pro se*, on May 5, 2007, Antunovich timely filed a claim, Claim No. 24, asserting an unsecured priority claim in the amount of $40,000.00 against the Debtors for "[h]ouse repairs required (building code violations)" for her home and referenced enclosures submitted with the claim. The enclosures consisted of several items of correspondence, including a letter between Antunovich and John Kinsella ("Kinsella"), a managing partner for the Debtors, regarding an alleged roof leak on Antunovich's home. Also attached to the claim are various third-party letters, the first of which is a letter dated March 6, 2006 from Kinsella to Corine O'Hara, Antunovich's attorney for the purchase of her home. The letter stated in pertinent part that "Bridgeport Village is responsible for fixing any City of Chicago code violations at 1300 West 33rd Place." Also included are letters from Brickcraft, Inc., a sub-contractor for the Bridgeport Project; one to one of the Debtors, River Village LLC, and another to Bank of America, a lender to the Bridgeport Village Project. Both Brickcraft letters reference alleged structural deficiencies. On June 1, 2007, Antunovich filed a timely amendment to her claim, docketed as Claim No. 24-2, asserting an unsecured priority claim for "[h]ouse repairs promised (to correct building violations)" in the amount of $72,500.00, attaching the same documents submitted with her original claim. The Debtors filed an objection to Claim No. 24 on January 3, 2008, after the claims bar date expired. Subsequent to the Debtors' objection, Antunovich filed another claim on February 19, 2008 alleging an unsecured priority claim for $1,044,063.91 for "[d]eceit/misrepresentation of condition of house to buyer and bank." Although Antunovich checked the "amends" box of the claim form, the clerk mistakenly filed this as a new claim, Claim No. 87. Attached to this claim was a single page titled "Summary of Amended Claim," containing an itemization of her loan amount and down payment, monthly payments for twenty-three months, property taxes, homeowner's insurance and attorney's

2

fees, all totaling the amount of her new claim. Simultaneously with the filing of this claim, Antunovich filed a second response to the Debtors' claim objection alleging fraud by Kinsella in connection with the purchase of her home. On March 20, 2008, Antunovich filed a motion for "Leave to Amend Claim 24-2 of Kathy Antunovich" and filed Claim No. 24-3, as an amendment to Claim No. 24-2, with the clerk in the amount of $145,000.00, based on fraud. She asserts her last two claim amendments, Claim No. 87 and Claim No. 24-3, were filed because she came across new information that she concedes had been available to the public before the claims bar date.

Included in the claims for various Chicago Building Code violations is a claim for a "gate" designed to correct a structural issue which is not included in the objection. However, based on her pleadings and claims, her claims, in part, are undecipherable.

### III. Discussion

The Debtors object to Antunovich's claims on several grounds. They contend that Claim No. 87 and Claim No. 24-3 should be disallowed because they were filed after the claims bar date. They disagree with Antunovich's contention that they amend her prior timely-filed claim. Instead, the Debtors argue that Claim Nos. 87 and 24-3 do not relate back to Antunovich's original claim because they assert claims that are wholly different than the timely-filed claims. Further, the Debtors object to Claim No. 24-2 because all applicable warranty repair items were previously addressed and any current defects are outside the one-year warranty period on the home.

*A. Antunovich's Amended Claims Filed After the Claims Bar Date*

Antunovich argues that Claim No. 87 and/or Claim 24-3 amend timely filed Claim No. 24-2 and should be allowed. The Debtors contend Claim Nos. 87 and 24-3 are separate claims filed after the claims bar date and should be disallowed.

In chapter 11 bankruptcy cases, the court sets bar dates for creditors to file proofs of claims. *In re Nat'l Steel Corp.*, 316 B.R. 510, 514 (Bankr. N.D. Ill. 2004). These dates are integral to the bankruptcy case, allowing efficient administration of the case and effective resolution of disputes. *Id.* (citing *In re Stavriotis*, 977 F.2d 1202, 1206 (7th Cir. 1992)). Claims filed after the bar date disrupt the orderly administration of the estate and are generally disallowed. *Matter of Unroe*, 937 F.2d 346, 351 (7th Cir. 1991). However, a creditor may, in certain instances, amend a timely filed claim. *Stavriotis*, 977 F.2d 1202, 1206 (7th Cir. 1992). However, the right to amend a claim after the bar date is not unqualified. *Id.* "[O]therwise, a party could effectively help itself to automatic extensions of the bar date without seeking leave of the court" allowing any "creditor... [to] file grossly misleading proofs of claim and later amend those claims as of right at their leisure, whenever they decided to calculate the extent of the actual debt claimed to be owed." *Id.* Amendments filed after the bar date are carefully scrutinized to ensure that a new claim is not filed under the guise of an amendment. *In re AM Int'l, Inc.*, 67 B.R. 79, 81 (N.D. Ill. 1986). Therefore, amendments "are allowed, where the purpose is to cure a defect in the claim as originally filed, to describe the [original] claim with greater particularity or to plead a new theory of recovery on the facts set forth in the original claim." *In re Enron Corp.*, 298 B.R. 513, 520 (Bankr. S.D.N.Y. 2003) (quoting *In re W.T. Grant Co.*, 53 B.R. 417, 420 (Bankr. S.D.N.Y. 1985)).

A two-pronged test must be satisfied in order to determine whether a claim amended after the claims bar date is a proper amendment or a completely new claim. The first prong is met when the purported amended claim "relates" back to the original claim under Federal Rule of Bankruptcy Procedure 7015(c) while the second prong relies on equitable considerations determined by the court. *See, e.g., In re Plunkett*, 82 F.3d 738, 740-41 (7th Cir. 1996); *Unroe*, 937 F.2d at 349-50 (7th Cir.

4

1991); *Enron Corp.*, 298 B.R. at 520-21 (Bankr. S.D.N.Y. 2003); *In re Marineland Ocean Resorts, Inc.*, 242 B.R. 748, 753-56 (Bankr. M.D. Fla. 1999); *In re Lehman Financial Group, LLC*, 2006 WL 2640210 at *1 (Bankr. N.D. Ill. 2006).

Addressing the first prong, Rule 7015[1] applies Federal Rule of Civil Procedure 15 to adversary proceedings. Fed.R.Bankr.P. 7015; *see also Unroe*, 937 F.2d at 349. Although a claims proceeding is not explicitly an adversary proceeding, Rule 9014 extends Rule 7015 to contested matters including claim disputes. *Unroe*, 937 F.2d at 349; *see also Stavriotis*, 977 F.2d at 1204 (7th Cir. 1992). A claim may be properly amended after the claims bar date if it "arose out of the conduct, transaction, or occurrence set out - or attempted to be set out - in the original [claim]." Fed.R.Civ.P. 15(c)(1)(B); *see also Unroe*, 937 F.2d at 349.

In this case, the purported amendments do not arise from the same transaction or occurrence as the original claim and timely filed amendment. In her timely filed amended claim, Antunovich asserted a claim for $72,500.00 for home repairs allegedly owed to her. However, once her claim became contested after the bar date, her claim, Claim No. 87, increased approximately fourteen times in amount to $1,044,063.91, creating an enormous disparity between the claims. She asserts that this claim was based upon misrepresentation and sought the entire value of her home and costs associated therewith, including financing and attorney's fees. Further, Claim No. 87 and its attached document make no mention of purported home repairs promised to Antunovich. Based upon this information, Claim No. 87 is an entirely new claim filed after the bar date and will not be allowed.

In Claim No. 24-3, Antunovich seeks $145,000.00, or two times the amount of her timely amended filed claim. She based this claim on fraud and amended it due to new information. This

---

[1] Unless otherwise stated, "Rule" will refer to the Federal Rules of Bankruptcy Procedure.

information includes correspondence between John George, an attorney for Kinsella and Lori T. Healey, Commissioner for the Department of Planning and Development for the City of Chicago. In these letters, George acknowledges several building code violations and sought variances on many of the properties located within Bridgeport Village, including the property Antunovich would eventually own. These variances were subsequently approved by Healy. This exchange was prompted after the City retained Wiss, Janney, Elster Associates, Inc. to review design plans of Bridgeport Village that outlined the various building code violations. Antunovich acknowledges that this was public information but states she was unaware of it before the bar date passed.

Claim No. 24-3 likewise does not appear to arise from the same transaction or occurrence. In it, Antunovich seeks twice as much as her timely filed claim and offers no explanation why. Although she offers a new theory for relief, she bases this claim on information she became aware of after the claims bar date. She concedes this information was available to the public before the bar date passed. Also, it is not even apparent what she is specifically seeking in this claim. Her original claim seeks repairs promised to her. However, even in her original claim, she does not clearly state what these repairs entail, except for a possible leak in her roof and any damage associated with that. In Claim No. 24-3, she does not clarify this claim nor does she explain why this claim is now double the amount of her timely filed claim. There is little, if any, indication that Claim No. 24-3 relates back to Claim No. 24-2. Therefore, Claim No. 24-3 will be disallowed as untimely filed.

Further, Claim Nos. 87 and 24-3 cannot withstand the equitable determination prong of the test. The leading method for making the equitable determination is balancing the factors as explained in *In re Miss Glamour Coat Co.*, 46 A.F.T.R.2d 6083, 1980 WL 1668 at *5 (S.D.N.Y.

1980).[2] However, the *Miss Glamour Coat* factors have been rejected by the Seventh Circuit. *See Plunkett*, 82 F.3d at 741. Instead, a claimant properly amending a claim after the claims bar date has passed must show the claim was not timely amended due to "excusable neglect." *Id.* at 742. To satisfy "excusable neglect," the creditor bears the burden of meeting a two-part test. *Id.*; *see also Pioneer Inv. Services Co. v. Brunswick Assoc. L.P.*, 507 U.S. 380, 395 (1993); *Nat'l Steel Corp.*, 316 B.R. at 515. To establish the first part of the test, the claimant must show "neglect," which is accomplished by a showing that the amendment was not timely filed due to circumstances beyond the claimant's control or that the amendment was filed late because of the claimant's inadvertence, mistake, or carelessness. *Nat'l Steel Corp.*, 316 B.R. at 515. Once "neglect" is shown, the claimant must show that it was "excusable" using the following factors: "(1) the danger of prejudice to the debtor; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the [claimant]; and (4) whether the [claimant] acted in good faith." *Id.* These factors are nonexclusive and require "an equitable determination of all relevant circumstances surrounding the party's omission." *Id.* (quoting *Pioneer*, 507 U.S. at 395).

Antunovich's delay in amending her claim after the bar date was the result of "neglect," establishing the first part of the test. The Debtors do not dispute this. However, the Debtors contend

---

[2] *See, e.g., In re Tanaka Bros. Farms, Inc.*, 36 F.3d 996, 998 (10th Cir. 1994); *In re Int'l Horizons, Inc.*, 751 F.2d 1213, 1216 (11th Cir. 1985); *Enron*, 298 B.R. at 521; *In re Oasis Petroleum Corp.*, 130 B.R. 89, 93-94 (Bankr. C.D. Cal. 1991); *Marineland Ocean Resorts*, 242 B.R. at 755. These factors are: "(1) whether the debtor and creditors relied upon the earlier proof of claim or had reason to know that a subsequent proof of claim would be filed; (2) whether other creditors would receive a windfall if the court refused to allow the amendment; (3) whether the claimant intentionally or negligently delayed in filing the amendment; (4) the justification for the failure to file for an extension to the bar date; [and] (5) whether other equitable considerations exist which compel amendment." *Marineland Ocean Resorts*, 242 B.R. at 755.

that Antunovich's "neglect" was not "excusable" under the *Pioneer* test.

The first factor of the *Pioneer* test, danger of prejudice against the Debtors, weighs heavily against allowing Claim No. 87 and/or 24-3. As stated earlier, Antunovich made a claim for $72,500.00 in her timely filed amended claim. However, in Claim Nos. 87 and 24-3, the amount of the claim increased to $1,044,063.91 and $145,000.00 respectively. Claim No. 87 increased over fourteen times the amount of the timely filed claim and Claim No. 24-3 seeks to increase the claim by twice as much. If the Debtors were required to pay on either amended claim instead of the timely filed Claim No. 24-2, there would be less money for the estate and the other creditors.

The second factor, length of the delay and its impact on the administration of the case also weighs against Antunovich. The general claims bar date expired June 5, 2007. Antunovich filed Claim No. 87 over eight months later in February 2008 and seeks to file Claim No. 24-3 even later, in March 2008. There are several cases where shorter time periods were determined to be acceptable. *See, e.g., Pioneer*, 507 U.S. at 384 (twenty days after bar date); *In re Dartmoor Homes, Inc.*, 175 B.R. 659, 662 (Bankr. N.D. Ill. 1994) (two weeks after bar date); *In re O'Shaughenessy*, 252 B.R. 722, 729 (Bankr. N.D. Ill. 2000) (three months after confirmation); *cf. In re Kmart Corp.*, 381 F.3d 709, 714-15 (7th Cir. 2004). In the present case, Antunovich's amendments come well beyond the acceptable time periods. In the eight months between the general claims bar date and Claim No. 87, much has progressed in this complex chapter 11 case. Allowing Claim No. 87 and/or Claim No. 24-3 would certainly disrupt the progress made in the case in the eight months since the bar date.

The third factor, the reason for delay, does not help Antunovich either. Antunovich states that her claim was amended late due to her coming "into new information in the form of copies of

public documents and records" that she states the existence of which she was unaware of "at the time." (Response to Debtors' Obj. to Claim 87 (Claim 24-2 Amended) of Kathy Antunovich, p. 2, ¶¶ 4-5). By this response, Antunovich admits these documents were available to the public. *Id.* However, she does not contend that these are documents that were somehow concealed from her or that access to them was impeded. Conversely, the Debtors did all that was required of them regarding Antunovich's claim by sending her notice of the bar date which she complied with by filing her timely filed amended claim.

The last factor to be considered is whether Antunovich acted in good faith in amending her claim after the claims bar date. The Debtors do not allege that Antunovich acted with bad faith, but it may be worth observing that Antunovich filed an amended claim in an amount fourteen times greater than her timely filed amended claim approximately a month after her claim was objected to. However, this factor does not affect this analysis.

Since Claims No. 87 and/or 24-3 cannot relate back to her timely filed claim under Rule 7015, they must be denied as untimely. Further, Antunovich cannot show "excusable neglect" to establish the second prong of whether to allow Claim No. 87 and/or 24-3 as a proper amendments. Therefore, the Debtors' Objection to Claim No. 87 of Kathy Antunovich is sustained. Claim No. 87 is disallowed. Further, Antunovich's motion for leave to amend Claim No. 24-2 as Claim No. 24-3 is denied.

B. *Antunovich's Timely Filed Claim (Claim No. 24-2)*

After disposing of Claim No. 87, Claim No. 24-2 remains. Claim No. 24-2 is for "[h]ouse repairs promised (to correct building violations)" in the amount of $72,500.00. To support this claim, Antunovich attached the same attachments she submitted with her original claim consisting

of the letter dated March 6, 2006 from Kinsella to Antunovich and the various third-party correspondence.

A properly filed proof of claim along with accompanying documents is *"prima facie* evidence of the validity and amount of the claim." *In re Salem*, 465 F.3d 767, 779 (7th Cir. 2006) (quoting Rule 3001(f); *see also* 11 U.S.C. § 502(a). The party objecting to a valid proof of claim carries the burden of rebutting the proof of claim. *See In re Grabill Corp.*, 121 B.R. 983, 992 (Bankr. N.D. Ill. 1990).

In looking at Claim No. 24-2, it is doubtful that Antunovich met her burden of filing a *prima facie* valid claim against the Debtors. There is nothing in the claim or the accompanying documents supporting the amount she claimed. She does not attach evidence of any type of obligation nor any evidence that her home was actually cited for any building code violations. Also, she did not own the property during the one-year warranty period or offer any testimony from prior owners regarding any rights under any warranty. Instead, she provided various correspondence, most of which was between third parties who did not testify or submit affidavits. This record fails to support her claim.

Assuming *arguendo* Antunovich met her burden of establishing a valid claim, the Debtors successfully met their burden objecting to this claim. Supporting their objection, the Debtors submitted the affidavit of John J. Vondran ("Vondran"), special transactional counsel for the Debtors, appointed by the Court. In the affidavit, Vondran stated that it was his task to investigate the claims of the homeowners in the Bridgeport Village development. Vondran further stated that he investigated Antunovich's claims and found they were all previously addressed. Additionally, even though the Debtors contend they were under no obligation to do so, Vondran stated the Debtors expended $4,577.74 to address Antunovich's concerns about potential building code violations.

Conversely, Antunovich does not provide any specifics regarding her claims. Based on this evidence, Antunovich cannot successfully assert her claim against the Debtors.

## IV. Conclusion

The Objection of J.S. II, L.L.C., River Village I, L.L.C, River Village West, L.L.C., and KND Investments, LLC to Claim No. 24 amended as Claim No. 24-2 is sustained because she failed to establish a valid claim since all claims were addressed during the applicable warranty period. Claim No. 24-3 and Claim No. 87 are disallowed as untimely filed. The Motion for Leave to Amend Claim 24-2 is denied.

Dated: April 16, 2008                              ENTERED

 

_____
Jacqueline P. Cox
U.S. Bankruptcy Judge